No. 85-548

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

_____

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

PATRICK CAIN,

Defendant and Appellant.

_____

APPEAL FROM: District Court of the Seventh Judicial District,
In and for the County of Dawson,
The Honorable R. C. McDonough, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Larry Mansch, Missoula, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Dorothy McCarter, Asst. Atty. General, Helena
Richard A. Simonton, County Attorney, Glendive,
Montana; Marvin L. Howe, Deputy County Attorney

_____

Submitted on Briefs: March 21, 1986

Decided: May 15, 1986

Filed: MAY 15 1986

_____
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Defendant, Patrick Cain, appeals his conviction of the offense of theft following a jury trial in the Seventh Judicial District Court, County of Dawson. We affirm the conviction.

On November 15, 1984, defendant and Burl Keith Hunter were arrested and charged with the theft of approximately $19,000 worth of drilling bits from Security Bits of Glendive, Montana. Hunter pled guilty. Cain pled not guilty, claiming that he was unaware of any criminal wrongdoing.

Hunter was the state's key witness at Cain's trial. He testified that he had known defendant for three or four years. He came to Miles City in November of 1984 to visit with defendant and to "party". While in Miles City, Hunter drove a three-quarter ton Ford pickup truck belonging to Eastman Whipstock, an oil field company located in Casper, Wyoming.

Hunter further testified that on November 7, 1984, after drinking heavily, he and Cain attempted to steal some drilling bits from various drilling rigs. The plan failed. The next day the two went to Glendive, Montana, called Security Bits and arranged to meet its representative at the shop in order to procure some bits.

Allan Swenson, sales manager for Security Bits, was out of town for the weekend. Melvin McDanold had agreed to be "on call" for Swenson in the event someone wished to make a purchase from the shop. McDanold and a friend, Danny Grigsby, met Hunter and defendant at the shop. Hunter testified that he then "took charge". He told McDanold that his name was Wayne Harther, he worked for an oil company out-of-state and he needed to purchase certain drill bits.

2

Eight bits were then selected and loaded into Hunter's truck. Hunter signed an invoice for the bits using his assumed name, Wayne Harther. Thereafter, according to Hunter, he and defendant went to Gettysburg, South Dakota, where they sold the eight drill bits for $1900. The money was divided equally between the two and they returned to Miles City.

Other witnesses for the State substantiated most of Hunter's testimony. McDanold testified that a "Wayne Harther" (Hunter) had called November 8, 1984, and stated he worked at Coastal Oil and Gas and needed some drilling bits. Hunter and a second individual (defendant) met McDanold at the shop. Hunter introduced himself as Wayne Harther. McDanold was unsure whether defendant was present at the time of the introduction but was fairly certain defendant could have heard the introduction. Hunter was definitely in charge. Defendant was "just there". After the bits were located, Hunter signed the invoice as Wayne Harther and departed.

Grigsby, McDanold's friend who accompanied him to the shop, testified that he and defendant had primarily stood around and talked while Hunter and McDanold searched for the bits. Hunter appeared to be in charge. Grigsby also stated that he was unsure whether defendant had heard Hunter introduce himself as Harther as defendant might have still been in the truck. After Hunter stated he was from Casper, Grigsby inquired of defendant whether he knew some of Grigsby's friends in Casper. Defendant stated that he had just moved from Oklahoma and did not know anyone.

The remainder of the relevant testimony came from a law officer. Highway Patrolman Warren Schiffer testified that after stopping Hunter on November 10, 1984, for a speeding violation, he discovered the truck had been reported stolen by Eastman Whipstock. Hunter and defendant were both

3

arrested. Defendant was subsequently released. At the time of arrest, Hunter had six $100 bills on his person and defendant had large bills totaling at least $250.

At the close of the State's case-in-chief, defendant's attorney moved for a directed verdict on two grounds: 1) the State failed to prove its case beyond a reasonable doubt; and 2) insufficient corroboration of the accomplice, Hunter's testimony. The motion was denied and the trial continued. Defendant was convicted of theft and received an eight-year suspended sentence.

On appeal, defendant raises the following issue:

Whether the trial judge erred, pursuant to § 46-16-213, MCA, in denying defendant's motion for a directed verdict at the close of the State's case?

Section 46-16-213, MCA, states:

> Testimony of person legally accountable. A conviction cannot be had on the testimony of one responsible or legally accountable for the same offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Whether evidence is sufficient to corroborate the testimony of an accomplice is a question of law. The evidence must show more than the fact that a crime was committed. It must raise more than a suspicion concerning defendant's involvement in the crime. However, it need not be sufficient, on its face, to support a prima facie case against defendant. State v. Kemp (1979), 182 Mont. 383, 386 - 387, 597 P.2d 96, 99. The evidence need only "tend to connect" defendant with the crime. State v. Mitchell (Mont. 1981), 625 P.2d 1155, 1158. 38 St.Rep. 487, 489 - 490. Further, the evidence may be circumstantial and it may come from the

4

defendant or his witnesses. <u>Kemp</u>, 182 Mont. at 387, 597 P.2d at 99.

Hunter's testimony implicating defendant was corroborated by testimony indicating that defendant knew Hunter was using an alias and testimony suggesting that defendant told Grigsby he was residing in Casper, Wyoming. Further, it is undisputed that defendant was at Security Bits at the time the bits were stolen. Finally, defendant was arrested with over $200 cash in his pocket on the road between South Dakota and Miles City two days after the theft. This is consistent with Hunter's testimony that he and defendant sold the drill bits in South Dakota for $1900 cash.

The testimony against defendant is circumstantial. But, as a matter of law, it is not insufficient to corroborate the accomplice's testimony. The testimony might also be, as defendant contends, consistent with innocent conduct on the part of defendant. Defendant's mother might have provided him with money for a job-hunting expedition to South Dakota. Defendant might not have heard Hunter introduce himself as Wayne Harther. However, these are factual questions, properly resolved by the jury. State v. Anderson (1982), 197 Mont. 374, 378, 643 P.2d 564, 566. The trial judge did not err when he refused to grant defendant's motion for a directed verdict.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

5

_____

_____
Justices