No. 89-108

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

       Plaintiff and Respondent,

  -vs-

SHAWN DREW CLAWSON,

       Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District
In and for the County of Lewis & Clark,
The Honorable Henry Loble, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Edmund F. Sheehy, Jr.; Cannon & Sheehy, Helena,
        Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Paul D. Johnson, Asst. Atty. General, Helena
        Mike McGrath, County Attorney; Carolyn A. Clemens,
        Deputy County Atty., Helena, Montana

Submitted on Briefs: Aug. 24, 1989

Decided: October 19, 1989

Filed:

FILED
'89 OCT 19 AM 11 22
ED SMITH, CLERK
MONTANA SUPREME COURT

_____
      Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Defendant, Shawn Drew Clawson, was charged with aggravated kidnapping, aggravated assault, sexual intercourse without consent, and attempted deliberate homicide in the District Court for the First Judicial District, Lewis and Clark County. The aggravated assault charge was dismissed. The jury found defendant guilty as charged of the offenses of of aggravated kidnapping, sexual intercourse without consent, and attempted deliberate homicide. Defendant was sentenced to 100 years for aggravated kidnapping, 100 years for attempted deliberate homicide, 40 years for sexual intercourse without consent, 100 years as a persistent felony offender, and 10 years for the use of a weapon, to run consecutively, making a total of 350 years. He was also declared ineligible for parole. Defendant appeals. We affirm.

Defendant presents three issues on appeal:

1. Did the District Court err in ruling that sexual intercourse without consent is not a lesser included offense of aggravated kidnapping, and therefore not dismissing the charge of aggravated kidnapping?

2. Did the District Court err in finding that the offense of attempted deliberate homicide was not impliedly repealed by the newly enacted offense of criminal endangerment?

3. Did the District Court err in denying defendant's motion for mistrial when the prosecution addressed punishment in its rebuttal closing argument?

The victim, L.B., lived in Helena, Montana. Near midnight, on June 10, 1980, L.B. received a phone call from a man stating that he had borrowed some car parts and tools from her husband and wanted to return them that night. L.B. felt uneasy because of the call and called her husband who

2

was working in the state of Idaho. He did not recall loaning tools to anyone. Her husband called later to make sure she was all right. He also asked a male friend, Mr. E., in Helena to check on L.B.

Mr. E. called L.B. shortly after the call from her husband. While he was talking to her, the defendant burst into the house through a bedroom window. L.B. testified that she recognized defendant as the man who had come to her home a week earlier requesting a tour of it because it was for sale, and also as the man who made the phone call earlier that night. As he approached her, she screamed "Oh no, Oh no." Defendant put a knife to L.B.'s throat and then hung up the phone. He forced her to leave clad only in a nightshirt and without slippers, and took her to his car several blocks away. She made several unsuccessful escape attempts.

Because there are no significant factual issues raised by the defendant we will not detail the very extensive criminal conduct of the defendant which extended over a period of many hours, starting after 1:00 a.m. Beginning in a vacant bus near her home and then continuing in various locations around the city, defendant repeatedly committed acts of sexual intercourse without consent on L.B., and in addition, by force required her to take part in various deviate sexual acts. Defendant repeatedly tortured L.B., choked her a number of times, burned her body with cigarettes and beat her physically with a club. Finally, after driving L.B. several miles out of town, defendant slammed her head into a rock and stabbed her 15 times in her chest and abdomen. We emphasize that the record is devoid of any evidence, or even suggestion of evidence, which demonstrates consent or participation in any of the conduct by L.B. The bestiality of the conduct on the part of defendant is overwhelmingly present in the record. We are unable to comprehend the lack of

consideration for another human being which was demonstrated by defendant, and which is apparent even from his own testimony. In the event that defendant finds it appropriate to seek further review, we invite any federal court to review the extensive transcript in order to gain an adequate understanding of the facts of this case.

Because of his fear of being caught, defendant concocted a story for L.B. to tell Mr. E. in order to explain why she hung up on him. Defendant forced L.B. to call Mr. E. and to relay the story about friends with whom she left to go drinking in Butte. L.B. attempted to tip off Mr. E. by asking questions about his wife although he was unmarried. Mr. E. had already called the police and sent them to L.B.'s home. Defendant also forced L.B. to call the police with the same phony story. As dawn approached, the defendant became nervous and drove L.B. out of Helena into the foothills near Canyon Ferry. He stopped when L.B. said that she had to go to the bathroom.

L.B. testified that she next awoke in the bottom of a ravine, clad in only her nightshirt, and bleeding from her wounds. She testified that she did not move at all that day because she was not strong enough to get up. At dusk she walked for about half an hour, and during that night alternated between walking and sleeping. Cactus spines punctured her bare feet. In the morning she slowly made her way out of the ravine to a road. Two people in a pickup truck drove past and saw her sitting on the side of the road with blood on her head. They rushed her to the hospital, where it was discovered she had been stabbed 15 times in her chest and abdomen. The hospital physician who treated L.B. testified that she had several "potentially fatal stab wounds," had lost a "minimum of 25% of her blood volume," and that her head wounds would have been potentially fatal had they not

4

"occurred on a particularly hard portion of the skull." He testified that L.B. probably would not have survived more than a few hours, had she not been rescued.

I

Did the District Court err in ruling that sexual intercourse without consent is not a lesser included offense of aggravated kidnapping, and therefore not dismissing the charge of aggravated kidnapping?

Defendant contends that pursuant to § 46-11-502, MCA, sexual intercourse without consent is a lesser included offense of aggravated kidnapping and that he cannot be convicted of both without resulting in double jeopardy. The basis of his claim is that the "without consent" element of sexual intercourse without consent is established by the kidnapping because the taking of someone against her will is without consent. At the close of the State's case-in-chief, defendant moved to dismiss the charge of aggravated kidnapping for that reason.

The State argues that in determining if one offense includes another, the statutory elements of each offense must be analyzed to determine if each offense contains an element different from the other. The State refers to a number of Montana cases and in particular relies upon State v. Thornton (1985), 218 Mont. 317, 708 P.2d 273. Defendant agrees that Thornton sets forth the appropriate standard. In Thornton the standard is discussed at some length as follows:

> Defendant's argument relies upon the holding found in Blockburger v. United States (1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306, 309, which states:
>
> > "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two

5

offenses or only one is whether each provision requires proof of a fact which the other does not."

> The first sentence of § 46-11-502, MCA, states: "When the same transaction may establish the commission of more than one offense, a person charged with such conduct may be prosecuted for each such offense." The statute goes on to enumerate some exceptions to this statement. Defendant, however, has not indicated which exception he relies on, but his argument appears to center around exception (1). This exception states: "[Defendant] may not, however, be convicted of more than one offense if . . . one offense is included in the other.
>
> In a series of recent cases this Court has clarified the application of the Blockburger rule and § 46-11-502. To determine if one offense is includable within another, the analysis looks to the statutory elements, not the particular factual situation. (Citations omitted.) If each offense contains an element different than the other there is no inclusion, even though there may be a substantial overlap in proof. (Citations omitted.)

The State maintains that the statutory definition of sexual intercourse without consent does not require the purpose to facilitate commission of a felony as defined in this case for aggravated kidnapping. In a similar manner, the statutory definition of aggravated kidnapping as here charged, does not require sexual intercourse without consent, but only the purpose to facilitate commission of a felony. We agree.

Under § 45-5-303(1)(a) and (c), MCA, the offense of aggravated kidnapping is committed when 1) a person knowingly or purposely, 2) without lawful authority, 3) restrains another person 4) by the use of threats or physical force, 5) with the purpose to facilitate commission of any felony. Section 45-5-503(1), MCA, provides that a person commits the offense of sexual intercourse without consent when he 1) knowingly, 2) has sexual intercourse, 3) without consent with a person of the opposite sex. We look to the statutes to

6

determine if each offense requires proof of a fact which the other does not. State v. Madera (1983), 206 Mont. 140, 670 P.2d 552.

To prove aggravated kidnapping the State must prove the kidnapping was committed with the purpose to facilitate commission of any felony. The State need not prove the actual commission of a felony. The State need only prove that there was the purpose to facilitate or aid in the commission of a felony. As appears from § 45-5-503(1), MCA, that element is not required to prove sexual intercourse without consent.

In order to prove sexual intercourse without consent, the State must prove an act of sexual intercourse. That element is not required under the aggravated kidnapping statute, § 45-5-303(1)(a) and (c), MCA.

Our comparison of the statutory elements of both crimes makes it clear that under the Thornton test, each offense contains an element different than the other. As a result, it is clear that one offense is not included in the other as prohibited under § 46-11-502(1), MCA. That disposes of the principal argument on the part of the defendant.

In addition, on appeal, defendant attempted to argue the application of § 46-11-503(4), MCA, which provides that a person may not be convicted of more than one offense if the offenses differ only in that one is defined to prohibit a designated kind of conduct generally and the other prohibits a specific instance of such conduct. As pointed out by the State, the defendant did not object on this theory at the trial court level. It is true that the district court may not be put in error for a ruling that it has not made. Nonetheless we will briefly discuss this theory in order to eliminate the contention of the defendant. Clearly sexual intercourse without consent is not a specific instance of

7

aggravated kidnapping. As a result there is a failure to meet the definitional provision of § 46-11-503, MCA.

We therefore conclude that under § 46-11-502, MCA, and Thornton, sexual intercourse without consent is not a lesser included offense of aggravated kidnapping. We affirm the holding of the District Court in so ruling.

II

Did the District Court err in finding that the offense of attempted deliberate homicide was not impliedly repealed by the newly enacted offense of criminal endangerment?

The offense of attempt is defined in § 45-4-103(1), MCA, as follows:

> A person commits the offense of attempt when, with the purpose to commit a specific offense, he does any act toward the commission of such offense.

A person commits the offense of deliberate homicide as defined in § 45-5-102(1), MCA, if:

> (a) he purposely or knowingly causes the death of another human being; or
>
> (b) he attempts to commit, commits, or is legally accountable for the attempt or commission of robbery, sexual intercourse without consent, arson, burglary, kidnapping, aggravated kidnapping, . . . or any other forcible felony and in the course of the forcible felony or flight thereafter, he or any person legally accountable for the crime causes the death of another human being.

Criminal endangerment is defined in § 45-5-207(1), MCA:

> (1) A person who knowingly engages in conduct that creates a substantial risk of death or serious bodily injury to another commits the offense of criminal endangerment.

Defendant argues that the intent of the 1987 Montana Legislature in enacting the criminal endangerment statute §

45-5-207, MCA, was to impliedly repeal the offense of attempted deliberate homicide. This would reduce the penalty imposed on defendant from a possible maximum penalty of life imprisonment to a maximum penalty of ten years. He contends that proof of criminal endangerment would show attempted deliberate homicide or vice versa, so it would not make sense to say that both offenses still exist under Montana law.

The State contends that any intention of the legislature to repeal an offense must be clear and manifest, which is not present in this case. It maintains that the key is whether each statute requires proof of an additional fact which the other does not require. It argues that because criminal endangerment does not require a purposeful act to cause the death of a human being, as does attempted deliberate homicide, defendant's argument fails.

The legislative history does not indicate that the creation of the offense of criminal endangerment impliedly repealed the offense of attempted deliberate homicide. The offense entails a wide variety of offenses, resulting from gross negligence and reckless behavior. Judiciary Committee Notes, February 5, 1987, page 4. The legislature considered endangerment statutes of Colorado, Washington, Oregon, Alaska and Arizona in drafting the criminal endangerment statute. Those states all consider endangerment as an assault-type offense and have classified it as a misdemeanor, gross misdemeanor, and a felony.

One of the cases analyzed by the legislature was a Washington Supreme Court decision. In that case, the defendant fired a .22 rifle at passing cars, parked cars and apartment buildings as a Halloween prank. He was convicted of assault and reckless endangerment. The reckless endangerment charge was based on the firing of the gun at an inhabited apartment building where one bullet went through a window

9

and into a wall. The Court ruled that this did not constitute double jeopardy, holding that "definite punishment" is not the same as "double punishment." State v. Turner (1981), 29 Wash.App. 282, 627 P.2d 1324.

Washington law defines "reckless endangerment" as follows:

> (1) A person is guilty of reckless endangerment when he recklessly engages in conduct which creates a substantial risk of death or serious physical injury to another person.

> (2) Reckless endangerment is a gross misdemeanor.

Wash. Rev. Code §9A.36.050 (1975). The only significant difference between the Washington statute and the Montana statute is the use of the term "reckless" in the Washington statute rather than "knowingly" as defined in Montana. Either way it is clear that the statute is created to punish reckless or negligent behavior which has the inherent potential of resulting in death or serious bodily injury to another person. Thus, criminal endangerment is clearly distinguishable from attempted deliberate homicide because the purpose of the behavior itself is different even if the result of the behavior may be the same. We affirm the District Court's conclusion that the offense of attempted deliberate homicide was not impliedly repealed by the newly enacted offense of criminal endangerment.

## III

Did the District Court err in denying defendant's motion for mistrial when the prosecution addressed punishment in its rebuttal closing argument?

At trial, defendant admitted to committing aggravated kidnapping and sexual intercourse without consent. The jury, then, only needed to decide whether defendant committed

10

attempted deliberate homicide or either mitigated attempted deliberate homicide or criminal endangerment. As already discussed, defendant adamantly argued that he did not intend to kill L.B. so he could only be charged with criminal endangerment. During closing arguments, the State made reference to the differences in punishment in these offenses. This was the basis of defendant's motion. The pertinent part of the disputed closing argument follows:

State's Closing Argument:

What about the defendant? Do you believe him? Is he a credible witness? Does he have a motive to lie? Sure he does. I think he summed it up in his statement that he made to [L.B.] in the car when Mr. Sheehy said well what did you talk about? I don't know why I am doing this. I just got out of jail for doing this. It happens every time I see an attractive woman. That is what he said. And that is why he is lying in this case. He does not want to go back to jail. So he told you a bare outline of what happened that night. He admitted to parts of it. He admitted to parts that there was physical evidence to substantiate, things that he couldn't dispute because the evidence was blatantly there in front of him. And then he minimized the rest of it . . .

Defendant's Closing Argument:

Now--I know Ms. Clemens says Shawn Drew Calwson has got a reason to lie. Doesn't want to go back to jail when he tells you specifically that he didn't have the intent to kill her. [H]e is going back to jail. He is going back to jail; has been in jail since the 15th of June, 14th of June. He got up here and admitted his guilt, admitted that he had sexual intercourse without consent, admitted that he had aggravated kidnapping. Why? If he intended to kill her wouldn't he say I intended to kill her? What has he got to gain from that? It has got nothing to do with not going back to jail . . .

State's Rebuttal:

There is a big difference between criminal endangerment and attempted deliberate homicide. Mr. Clawson is worried about how long he is going to be in jail. How many years he will be there and whether he will ever be out again. That is what he is worried about. That is why his attorney wants you to find him guilty of criminal endangerment and not attempted deliberate homicide.

The State maintains that this was not prejudicial in light of the cautionary instructions given to the jury immediately after denying the motion:

You are not to be concerned with the penalty provided by law for the offenses charged or to speculate on what it might be or should be in this case. Imposing sentence within the bounds set by the legislature is the exclusive business of the Court and has nothing whatever to do with your verdict. Your task is to consider the facts and render your verdict upon the facts . . .

You should take the law in this case from the instructions alone. You should not give any weight to statements of counsel or of anyone else as to what the law is, nor should you allow yourselves to decide this case contrary to these instructions, even though you might believe that the law ought to be otherwise.

The State further points out the District Court's ruling on the motion:

I have no objection to telling the jury that in accordance with the instructions that they were given that punishment is not their job, it is my job. And they are not to consider it. But I do not think that a mis-trial should be granted. I don't think the jury was in any way prejudiced by it and as I did remark at one time the Court's instruction refers to mitigated attempted,

12

> mitigated deliberate homicide and criminal endangerment as being lesser included offenses. From that almost any person of average intelligence would surmise that the punishment for a lesser included offense is less than it is for the main crime. I just think that is—that is implied in the Court's instructions. So it is just one of those things that I think everybody understood.

The State contends that even if the remarks in closing were improper, any error is presumed to be corrected if the District Court gave the jury a proper cautionary instruction.

There must be a manifest necessity to declare a mistrial and the defendant must have been deprived of a fair and impartial trial. State v. Brush (1987), 741 P.2d 1333, 1336. 44 St.Rep. 1495, 1499.

> The test for declaring a mistrial was stated by the United States Supreme Court in United States v. Perez (1824), 22 U.S. (9 Wheat.) 579, 580: "[T]he law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject . . . [T]he power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; . . . State v. Close (1981), 623 P.2d 940, 945-946, 38 St.Rep. 177, 183.

State v. Doney, (Mont. 1981), 636 P.2d 1377, 1383, 38 St.Rep. 1707, 1714.

The references to the differences in punishment were made to explain why the defendant had a motive to lie. We agree with the District Court's conclusion that there was no prejudice to the defendant by the references to punishment. Furthermore, the evidence is replete with detailed testimony of L.B. which overwhelmingly established the offense of attempted deliberate homicide. The District Court promptly

13

gave the jury a cautionary instruction admonishing them to disregard the State's reference to punishment. We conclude that the District Court was correct in denying the defendant's motion for mistrial on this theory.

We also note that the defendant argued that the action of the State in calling the defendant a "liar" was prejudicial. The State's reference to defendant as a "liar" was nothing more than an opinion based on the State's analysis of evidence, and did not constitute an expression of the State's personal opinion of guilt. See State v. Armstrong (1980), 189 Mont. 407, 616 P.2d 341. We conclude there was no basis for mistrial as a result of this action by the State.

We affirm the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

Justice John C. Sheehy did not participate in this matter.