No. 90-399

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

JAMES A. CROWDER,

Defendant and Appellant.

**FILED**

APR 24 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        William Dee Morris, Attorney at Law, Helena, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Deanne L. Sandholm, Assistant Attorney General,
        Helena, Montana
        Robert L. Deschamps, III, County Attorney, Missoula,
        Montana
        Barbara Harris, Deputy County Attorney, Missoula,
        Montana

                        Submitted on Briefs:   March 21, 1991

                                Decided:   April 24, 1991

Filed:

_____
                    Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

A jury sitting in the District Court of the Fourth Judicial District, Missoula County, convicted James A. Crowder of three counts of felony possession of dangerous drugs, one count of misdemeanor possession of a dangerous drug, and one count of criminal possession of drug paraphernalia, a misdemeanor. We affirm.

Crowder presents the following issues:

1. Did the District Court err in finding that the application for the search warrant contained facts sufficient to establish probable cause?

2. Did the District Court err in refusing to order disclosure of the identities of the police informants?

3. Did the District Court err in failing to join Counts I and II into a single count of possession of the dangerous drug methamphetamine?

## Summary of Facts

Police received information from four informants over a period of a year alleging that James A. Crowder and his brother were manufacturing and selling methamphetamine. Only two of the informants were known to be reliable to police. The first informant, whose identity was known to the officer, apprised Detective Larry Jacobs in August 1988 that Crowder was distributing in Missoula County methamphetamine manufactured by Crowder's brother in Idaho.

In October 1988 another informant, anonymous, but familiar by

sight and known to be reliable by other police officers, told Detective Rocky Harris much the same information.

On June 2, 1989, a third informant disclosed to Detective Jacobs that the Crowder brothers had moved their methamphetamine lab to Missoula County. The third informant stated that, although he did not know the specific location of the lab, he had observed the glassware the Crowders used, had seen the finished product, and was in constant touch with the Crowders. Detective Jacobs knew the third informant, but had not previously relied upon him for information.

On August 14, 1989, a fourth informant, known to be reliable by Detective Jacobs, revealed that Jim Crowder had a methamphetamine lab and chemicals in the garage at his residence on Evaro Hill. The informant had seen the finished product, but not the lab. The fourth informant was involved in working on another case with police.

On August 17, 1989, the third informant, whose reliability was unknown, contacted Detective Jacobs for a second time. The informant claimed that he had personally observed Crowder's methamphetamine lab and chemicals in Crowder's garage near his house. According to the third informant, Crowder was likely to produce one to two pounds of methamphetamine within the next week. The third informant also believed that Crowder had marijuana growing on his property.

After the tip from the fourth informant, on August 14, 1989, Detective Jacobs and Agent Long of the Montana Criminal Investigation Bureau drove to Crowder's residence and observed it

3

from 8:00 to 11:00 p.m. The officers saw three men working on a pickup in the garage. Detective Jacobs and Agent Long, walking about 50 yards from the garage, thought that they detected an odor similar to that of chemicals used in the methamphetamine manufacturing process.

Based on the above information, a search warrant was issued, and eighteen fully-armed state and federal police officers approached the residence on August 18, 1989. When it became apparent that no danger existed, all of the men left except six officers who searched Crowder's residence for five hours.

Officers searched Crowder's person and found a brown vial containing methamphetamine residue and a brass pipe. In the garage officers discovered filter papers, one of which contained traces of methamphetamine, a glass tube, and a razor blade. In Crowder's home, officers seized a peyote plant, a plastic baggie containing marijuana, another vial containing methamphetamine residue, marijuana on a tray in the kitchen cupboard, and another pipe used for smoking drugs.

One of the officers testified in a pre-trial hearing that police also seized a gas mask, rubber gloves, cooking instructions, and the recipe for methamphetamine, although these items were not introduced as evidence at trial.

Police did not find the glassware or chemicals used to make methamphetamine.

A jury found Crowder guilty of criminal possession of methamphetamine on the defendant's premises, criminal possession of methamphetamine on the person, and criminal possession of

4

mescaline, all felonies, as well as criminal possession of marijuana and criminal possession of drug paraphernalia, both misdemeanors.

Crowder received a five-year prison sentence for each of the first two counts, to be served concurrently, a five-year sentence for the third count, and six months in prison for each of the last two counts. All of the sentences were suspended, except for the concurrent five-year sentences for the first two counts. Crowder was also fined $1,000 and required to pay court costs.

I

Did the District Court err in finding that the application for the search warrant contained facts sufficient to establish probable cause?

Crowder claims that the search warrant application was insufficient to establish probable cause because the police investigation was inadequate to corroborate the information provided by informants. Additionally, Crowder asserts that the application contained stale tips and was lacking in details about Crowder's drug involvement.

A search warrant must state "facts sufficient to show probable cause for issuance of the warrant." Section 46-5-202(1)(b), MCA. To determine whether a magistrate had probable cause to issue a warrant, the reviewing court must look solely to the information given to the impartial magistrate and to the four corners of the search warrant application. State v. Sundberg (1988), 235 Mont. 115, 121, 765 P.2d 736, 740.

To address the issue of probable cause for issuance of a

5

warrant, this Court has adopted the "totality of the circumstances" test set forth in Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. State v. Jensen (1985), 217 Mont. 272, 704 P.2d 45. The duty of the reviewing court is to ensure that the magistrate had a "'substantial basis'" to conclude that probable cause existed. Gates, 462 U.S. at 238-39, 103 S.Ct. at 2332, 76 L.Ed.2d at 548 (quoting Jones v. United States (1960), 362 U.S. 257, 271, 80 S.Ct. 725, 736, 4 L.Ed.2d 697, 708). Ascertaining the veracity and bases of informants' knowledge are important aspects of the "totality of the circumstances" test:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

Gates, 462 U.S. at 238, 103 S.Ct. at 2332, 76 L.Ed.2d at 548. The United States Supreme Court emphasized the "value of corroboration of details of an informant's tip by independent police work" establishing a "'substantial basis for crediting the hearsay.'" Gates, 462 U.S. at 241-42, 103 S.Ct. at 2334, 76 L.Ed.2d at 550 (quoting Jones, 362 U.S. at 269, 80 S.Ct. at 735, 4 L.Ed.2d at 707).

Arguably, the investigation by the police department could have been more thorough. The location of the Crowder residence and outbuildings as described by informants was confirmed. Officers observed the Crowder residence for three hours. According to testimony, the officers saw three men working in the garage on a pickup truck. The other evidence gained by the officers was that

they detected "an odor similar to that of chemicals used in the production of methamphetamine" when they walked within 50 yards of the garage.

Information in the warrant application about the informants and their sources, combined with the officers' investigation, though less complete than would be desirable, is a basis for the probability that contraband would be found at the Crowder residence. The application stated that the fourth informant possessed "proven reliability." The warrant application did not report the source of the fourth, reliable, informant's knowledge. However, the United States Supreme Court noted in Gates:

> If, for example, a particular informant is known for the unusual reliability of his predictions of certain types of criminal activities in a locality, his failure, in a particular case, to thoroughly set forth the basis for his knowledge surely should not serve as an absolute bar to a finding of probable cause based on his tip.

Gates, 462 U.S. at 233, 103 S.Ct. at 2329-30, 76 L.Ed.2d at 545.

The third informant, although his reliability was not known, gave some details and stated that he had personally observed the lab and chemicals in Crowder's garage. An informant's personal observation of criminal activity is not hearsay information. Sundberg, 235 Mont. at 121, 765 P.2d at 740. The Supreme Court also commented on an informant's personal observation in Gates:

> Conversely, even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.

Gates, 462 U.S. at 234, 103 S.Ct. at 2330, 76 L.Ed.2d at 545. The warrant application recited the third informant's tip that a

methamphetamine lab was located in Crowder's garage and his description of the location of Crowder's property and garage. In addition, the warrant gave the following information:

> The informant also stated that he believes Jim Crowder may also be growing marijuana on his property. This confidential informant further stated that he believes Jim Crowder has enough chemicals at his residence to produce approximately two pounds of meth-amphetamine and is likely to produce a large amount, possibly 1 or 2 pounds within the next week.

We find that sufficient details were provided to be considered under Gates.

Crowder protests the two tips from nearly a year previous to the warrant application as stale. "[A] determination of staleness in any given case depends largely on the nature of the property and activity in issue." State v. Walston (1989), 236 Mont. 218, 223, 768 P.2d 1387, 1390. By themselves the August and October 1988 tips would not have been enough to establish probable cause. However, taken together with information gathered from later informants, the tips helped to establish a pattern of ongoing criminal activity. In addition, according to testimony, the first informant, though anonymous, was known by sight to other officers who recognized the informant as reliable.

"A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.'" Gates, 462 U.S. at 236, 103 S.Ct. at 2331, 76 L.Ed.2d at 547 (quoting Spinelli v. United States (1969), 393 U.S. 410, 419, 89 S.Ct. 584, 591, 21 L.Ed.2d 637, 645). We hold that the circumstances set forth in the warrant application--the tip from a reliable informant coupled with an informant's personal observation, and corroboration of the

8

location and detection of an odor by the officers--viewed in their totality, formed a substantial basis for the magistrate to conclude that probable cause to find contraband or other evidence of wrongdoing on the Crowder premises existed.

## II

Did the District Court err in refusing to order disclosure of the identities of the police informants?

Crowder alleges that disclosure of the identity of the police informants was necessary to his defense because the informants "had provided false information to the authorities and examination of these informants would show that they were patently unreliable . . . ."

Montana Rules of Evidence provide:

(a) Rule of privilege. The United States or a state or subdivision thereof has a privilege to refuse to disclose the identity of a person who has furnished information relating to or assisting in an investigation of a possible violation of a law.

. . .

(c) Exceptions and limitations.

. . .

(2) Testimony on relevant issue. If it appears in the case that an informer may be able to give testimony relevant to any issue in a criminal case or to a fair determination of a material issue on the merits in a civil case to which a public entity is a party, and the public entity invokes the privilege, the court shall give the public entity an opportunity to show facts relevant to determining whether the informer can, in fact, supply that testimony.

Rule 502, M.R.Evid.

This Court has adopted the balancing test expressed in Roviaro v. United States (1957), 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639.

9

Disclosure of an informant's identity requires "balancing the public interest in protecting the flow of information against the individual's right to prepare his defense." Roviaro, 353 U.S. at 62, 77 S.Ct. at 628-29, 1 L.Ed.2d at 646. Disclosure "must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id.

By statute the District Court need not order disclosure of the identity of an informant who will not be called to testify if (1) disclosure would "result in substantial risk to the informant or to his operational effectiveness;" and (2) "failure to disclose will not infringe the constitutional rights of the accused." Section 46-15-324(3), MCA. The defendant must show the need for revealing the informant's identity. Mere speculation or conjecture about the relevance of the testimony is not adequate. State v. Babella (1989), 237 Mont. 311, 315, 772 P.2d 875, 878.

Crowder maintains that the third informant lied because police found neither glassware, chemicals, the finished product, nor evidence of a marijuana growing operation as described in the warrant application. While a methamphetamine lab was not discovered, according to testimony offered at the pretrial hearing, officers did seize articles consistent with methamphetamine production, including gas masks, a coffee filter containing methamphetamine, cooking instructions, and the recipe for methamphetamine manufacture written on a coffee filter.

As for the marijuana growing operation, the warrant

10

application stated that the informant _believed_ that marijuana was being grown on Crowder's property, not that the informant had seen the marijuana.

We note that it was particularly in the public interest not to reveal the identity of the fourth informant who was being used in another police investigation. Because Crowder failed to demonstrate that the information supplied to police was false, we affirm the District Court's refusal to order disclosure of the informants' identities.

### III

Did the District Court err in failing to join Counts I and II into a single count of possession of the dangerous drug methamphetamine?

Crowder was charged and convicted of one count of criminal possession of methamphetamine on his person and one count of criminal possession of methamphetamine on his premises. These charges arose from the search of Crowder's residence, where police found a vial containing methamphetamine residue on Crowder's person and discovered another vial containing methamphetamine residue in Crowder's bedroom, as well as methamphetamine in a coffee filter located in the garage.

Crowder asserts that "principles of fundamental fairness require that a defendant be charged only once for conduct which amounts to the 'same transaction.'" See § 46-11-501(1), MCA. The State responds that the test to determine whether the defendant has committed two offenses or only one is whether each count requires proof of a fact which the other does not.

11

We have not previously addressed the issue of whether possession "on the person" and "on the premises" constitute separate offenses. Generally, under the Fifth Amendment to the United States Constitution, applied to the states in 1969, a person cannot be tried more than once for the same conduct. State v. Wells (1983), 202 Mont. 337, 658 P.2d 381; Benton v. Maryland (1969), 395 U.S. 784, 796, 89 S.Ct. 2056, 2063, 23 L.Ed.2d 707, 717.

The Constitutional prohibition against double jeopardy protects a defendant both from multiple punishments imposed at a single prosecution for the same offense and from multiple prosecutions for offenses arising out of the same transaction. State v. Palmer (1983), 207 Mont. 152, 158, 673 P.2d 1234, 1237. In examining questions of double jeopardy, this Court has consistently applied the test set forth in Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. One issue in Blockburger was whether petitioner should have been convicted of violations of two statutory provisions arising from a single sale of morphine:

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

Blockburger, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309 (emphasis added).

The Blockburger test is a "test of statutory construction . . . to determine whether Congress intended the same conduct to

12

be punishable under two criminal provisions." Ball v. United States (1985), 470 U.S. 856, 861, 105 S.Ct. 1668, 1671, 84 L.Ed.2d 740, 746. Since Blockburger, the United States Supreme Court "has recognized that the Blockburger test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." Illinois v. Vitale (1980), 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228, 235.

This Court has employed the Blockburger test to determine whether a defendant can be charged and convicted of violating two statutes for the same act or transaction. For example, we have ruled that a defendant can be convicted of both sexual intercourse without consent and aggravated kidnapping, State v. Clawson (1989), 239 Mont. 413, 781 P.2d 267; of both misdemeanor assault and sexual assault, State v. Long (1986), 223 Mont. 502, 726 P.2d 1364; but cannot be convicted, when the drugs are identical, of both possession of dangerous drugs and possession of dangerous drugs with intent to sell. State v. Peterson (1987), 227 Mont. 503, 741 P.2d 392.

In contrast, Crowder was charged with two violations of the same statutory provision, § 45-9-102, MCA, which provides in part:

> A person commits the offense of criminal possession of dangerous drugs if he possesses any dangerous drug, as defined in 50-32-101.

Section 45-9-102(1), MCA. Thus, the question is whether Crowder's possession of drugs on his person and possession of drugs on his property constituted two separate acts of possession. See United States v. Woods (6th Cir. 1978), 568 F.2d 509 (issue is whether

13

one course of conduct can result in multiple violations of the same statute, rather than whether a single act violates a multiplicity of statutes), cert. denied, 435 U.S. 972, 98 S.Ct. 1614, 56 L.Ed.2d 64 (1978).

The United States Supreme Court ruled on a similar question in considering a second issue in Blockburger. The petitioner, convicted of two additional counts of selling morphine under a single provision of the Narcotics Act, contended that because the two sales in question were made to the same person within a short time, they comprised a single continuing offense. Examining legislative intent, the Supreme Court concluded that the statute did not punish engaging in the business of selling dangerous drugs, but penalized any sale:

> Each of several successive sales constitutes a distinct offense, however closely they may follow each other. The distinction stated by Mr. Wharton is that "when the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie."

Blockburger, 284 U.S. at 302, 52 S.Ct. at 181, 76 L.Ed. at 308 (citation omitted); see also Bell v. United States (1955), 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905; United States v. Universal C.I.T. Credit Corporation (1952), 344 U.S. 218, 73 S.Ct. 227, 97 L.Ed. 260. To determine the "allowable unit of prosecution" courts look to legislative intent since discretion is with the legislature to impose punishments, subject only to constitutional limitations. Bell, 349 U.S. at 81-82, 75 S.Ct. at 622, 99 L.Ed. at 910. See State v. Meadors (1978), 177 Mont. 100, 580 P.2d 903 (legislature meant to provide distinct crimes for possession of different kinds

14

of dangerous drugs).

In this case, the statutory language clearly demonstrates that the legislature intended to punish each separate "possession" of dangerous drugs, but we are still left with the question of what constitutes a separate "possession." Generally, when defendant possesses "the same controlled substance in the same place at the same time, he commit[s] only one act of possession." United States v. Johnson (D.C. Cir. 1990), 909 F.2d 1517, 1519; see also United States v. Woods (6th Cir. 1978), 568 F.2d 509; United States v. Williams (6th Cir. 1973), 480 F.2d 1204.

According to the legislature, possession is the "knowing control of anything for a sufficient time to be able to terminate control." Section 45-2-101(52), MCA. The elements of possession are knowledge and control. State v. Krum (1989), 238 Mont. 359, 777 P.2d 889. In addition, this Court has distinguished between "actual" possession and "constructive" possession:

> Actual possession means that the drugs are in the personal custody of the person charged with possession; whereas constructive possession means that the drugs are not in actual physical possession but that the person charged with possession has dominion and control over the drugs.

State v. Van Voast (Mont. 1991), 805 P.2d 1380, 1383, 48 St.Rep. 160, 161. Crowder's possession of drugs "on the person" constituted "actual" possession, while his possession of drugs "on the premises" constituted "constructive" possession. We note that the jury instructions included definitions of both "actual" and "constructive" possession.

In addition, federal courts have upheld separate convictions

15

based in part on the manner of possession, constructive and actual. See United States v. Briscoe (7th Cir. 1990), 896 F.2d 1476, cert. denied, ___ U.S. ___, 111 S.Ct. 173, 112 L.Ed.2d 137 (1990); United States v. Rich (8th Cir. 1986), 795 F.2d 680. We conclude that the District Court did not err in failing to join the separate counts of possession "on the person" and possession "on the premises."

Affirmed.

_____
                                    Justice

We concur:

_____
        Chief Justice

_____

_____

_____
        Justices

16

Justice William E. Hunt, Sr., dissenting:

I dissent. The majority again appears to abandon "probable cause" for "remote possibility."

The purpose of the search warrant provision of the Fourth Amendment to the United States Constitution is that the long and powerful arm of the law may not reach into and disrupt people's lives without reason. The four corners of the warrant must contain facts sufficient to show that it is more probable than not that fruits of a crime will be found.

Here we have almost 20 fully armed officers of the law descending on a person's home, some of whom stay and turn it upside down for five hours. What facts justify this drastic incursion into the defendant's life? The four corners of the search warrant contain: two stale informants' tips; one tipster who said he had seen a lab but offered no detail at all regarding it; one tipster said to be reliable but with no basis for the reliability given in the application; and "corroboration" by the police of these outdated or flimsy tips consisting of verifying that the suspect's residence was in fact where the tipsters said it was. The application also states that two officers walking a distance equal to one-half of a football field, "detected an odor similar to that of chemicals [which were never found] used in the production of methamphetamine."

The chemicals used in the production of methamphetamine are common compounds. They are not, like the odor of burning

17

marijuana, indicative of criminal activity. Nor is it suspicious that the defendant's residence was located where the tipsters said it was. So, we base a warrant on no independent corroboration of not necessarily reliable tips, and it justifies a five hour search of a person's house. This is not within the contemplation of even the relaxed Gates standards for probable cause, let alone within the parameters of the Fourth Amendment.

I must continue to dissent to opinions which leave open the door to illegal incursion into homes and lives of citizens. If anything, Montana's probable cause standard should be higher than the federal standard, consistent with our expressed constitutional right to privacy. Further, the recurrence in this Court of tenuous probable cause showings proves the point that as long as we allow questionable warrants to stand, the courts of this state will continue to be clogged with appeals from diligent readers of the state and federal constitutions.

I dissent to the second issue in the majority opinion because the warrant makes no showing that the confidential informant is reliable. In the absence of any additional information, the defendant is unable to question the application to determine if the informant even exists, let alone is reliable.

I dissent to the third issue in the majority opinion. The majority's unprecedented decision that a suspect may be charged with separate felony counts for the same drug found on the person and on the premises is alarming.

18

The majority relies on Blockburger to support its conclusion that each of Crowder's two possession charges necessitated proof of a fact that the other did not. Blockburger provides that two offenses can derive from the same act if each provision requires proof of a fact which the other does not. The majority here concludes that because it characterizes one possession as "actual" and one as "constructive," different proof was required for each, and therefore, the Blockburger test applies.

But the fact is that it is the possession of the particular drug, whether actual or constructive, that is the single item to be proved. Sale of drugs presents a different situation, as each sale is a separate transaction. And separate drugs are meant to be prosecuted separately, as we stated in State v. Meadors, cited by the majority. But as the majority points out but then fails to follow, "when the defendant possesses 'the same controlled substance in the same place at the same time, he commit[s] only one act of possession.'" Citing United States v. Johnson, 909 F.2d 1517, 1519 (D.C.Cir. 1990) (emphasis added).

In United States v. Woods, 568 F.2d 509 (6th Cir. 1978), the Sixth Circuit Court of Appeals stated, regarding heroin possession:

> [A]s long as the statute does not graduate the gravity of the crime of possession of heroin by the quantity possessed, we see no indication that Congress intended to permit a multiplication of the offenses of possession at any given time by a defendant upon evidence that the heroin may merely have been separately packaged or stashed.

19

<u>Woods</u>, 568 F.2d at 513 (emphasis added). <u>Woods</u> also explains that the sentencing potentialities permit one conviction to accommodate an inclusive possession conviction. See also, United States v. Williams, 480 F.2d 1204 (6th Cir. 1973), (holding that only one offense should have been charged when four separate packages of the same drug were found). Further, the cases the majority cites as upholding "separate convictions based on the manner of possession, actual or constructive" are not analogous to the facts before us. United States v. Briscoe, 896 F.2d 1476 (7th Cir. 1990), upholds three separate charges where drugs were smuggled into the country in the body cavities of three different women. United States v. Rich, 795 F.2d 680 (8th Cir. 1986), upholds separate charges for drugs found on a man's person at an airport, and later at his home. Neither presents a case, like Crowder's, of separate charges for possession "in the same place at the same time."

The decision to charge separate possessions of the same drug separately has serious implications. Overzealous prosecutors may find themselves able to charge a marijuana grower separately for each plant, or a methamphetamine manufacturer for each package of separately stored contraband. This departure should not be condoned by this Court.

I would vacate the sentence and remand to the District Court.

_William B. Hunter_
Justice

20

Justice Terry N. Trieweiler dissenting:

I concur in the dissent of Justice Hunt.

_____
Justice