IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 96-071

MICHAEL SCOTT STILSON,

    Petitioner,

    v.

STATE OF MONTANA,

    Respondent.

OPINION
AND
ORDER



FILED

JUN 25 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Petitioner Michael Scott Stilson has filed a petition for post-conviction relief alleging that convictions he received in the Fourth and Eighth Judicial District Courts violated his rights to not be twice put in jeopardy guaranteed by the Fourteenth and Fifth Amendments to the United States Constitution, and Article II, Section 25, of the Montana Constitution.

On March 26, 1991, the State filed an Information in the First Judicial District Court charging Stilson with the crime of issuing a bad check, a felony, common scheme, for numerous bad checks written in Lewis and Clark County. On the same day Stilson pled guilty to the charge, and on March 27, 1991, the District Court sentenced Stilson to a three-year deferred imposition of sentence.

On January 29, 1991, the State filed an Information in the Fourth Judicial District Court charging Stilson with issuing more than three bad checks in Missoula County, a felony, common scheme. On April 1, 1991, Stilson pled guilty to the charge, and on May 20, 1991, the District Court sentenced Stilson to a suspended sentence of six years confinement to run consecutive to the sentence imposed by the First Judicial District Court.

On May 28, 1991, the State filed an Information in the Eighth Judicial District Court charging Stilson with issuing a bad check, a felony, common scheme. While the Cascade County Information specifically referenced only a single bad check written in Cascade County, it listed as witnesses individuals from six separate Great Falls businesses. On June 14, 1991, Stilson pled guilty to the charge and on the same day the District Court sentenced him to ten years confinement to run consecutive to the sentences imposed in the First and Fourth Judicial District Courts. Execution of the sentence was suspended. The judgment indicated that Stilson wrote 20-25 checks in the Great Falls area and that the total checks written in Cascade County totaled $2,961.

Stilson also wrote bad checks in Yellowstone and Butte-Silver Bow Counties. Stilson was not prosecuted in either of those counties but the judgment entered by the Fourth Judicial District Court ordered Stilson to pay restitution for those bad checks.

On February 15, 1996, Stilson filed this petition for post-conviction relief alleging his convictions in the First, Fourth, and Eighth Judicial District Courts were for the same common scheme and, therefore, that the Fourth and Eighth Judicial District Court convictions violated his double jeopardy rights.

The State argues that Stilson's double jeopardy claims are waived because he failed to raise them prior to entering his guilty pleas. Stilson argues that he did not waive his double jeopardy claims when he pled guilty because his claims are jurisdictional.

It is well established that a plea of guilty which is

2

voluntary and understandingly made constitutes a waiver of nonjurisdictional defects and defenses, including claims of constitutional violations which occurred prior to the plea. Hagan v. State (1994), 265 Mont. 31, 35, 873 P.2d 1385, 1387 (citing State v. Turcotte (1974), 164 Mont. 426, 428, 524 P.2d 787, 788). In Hagan we held that the jurisdictional grounds exception applies to "those cases in which the district court could determine that the government lacked the power to bring the indictment *at the time of accepting the guilty plea from the face of the indictment or from the record.*" Hagan, 873 P.2d at 1388 (quoting United States v. Cortez (9th Cir. 1992), 973 F.2d 764, 767).

When Stilson pled guilty and was sentenced in Cascade County the District Court had before it a copy of the pre-sentence investigation report prepared with regard to Stilson's previous sentencing in Missoula County. The report also referenced Stilson's conviction in Lewis and Clark County.

Thus, we conclude that at the time the Eighth Judicial District Court accepted Stilson's guilty plea the record before it contained his two prior convictions and was sufficient for the court to determine whether the government lacked the power to bring the charges at issue due to the constitutional prohibitions against placing a person twice in jeopardy. We conclude that Stilson has not waived his double jeopardy claim and therefore proceed to address the merits of his claim.

Stilson claims that he engaged in one common scheme to write bad checks in five different counties and the only thing that

3

separates his crime into parts is geography. He argues that "common scheme" is an element of the crimes charged and that nothing in the charges evidences a different continuing criminal design. Stilson maintains that since he was convicted and punished for the common scheme in Lewis and Clark County, he cannot be prosecuted or punished again.

The State argues that double jeopardy protections prohibit multiple punishments for the same offense, and that in this case the Legislature intended "issuing a bad check" to be the offense, not "common scheme." The State asserts that "common scheme" is not an element of the offense but rather a sentence enhancement provision which determines if the offense is a misdemeanor or felony. The State maintains that the offense in each county did not require proof of acts committed in the other counties and therefore they were separate and distinct offenses. According to the State, convicting a defendant of one common scheme does not foreclose convictions of additional common schemes in different counties.

In State v. Crowder (1991), 248 Mont. 169, 810 P.2d 299, we stated that in examining questions of double jeopardy, this Court has consistently applied the test set forth in Blockburger v. United States (1932), 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306. Crowder, 810 P.2d at 304. We noted that Blockburger dealt with two different double jeopardy issues--one was whether the defendant could be convicted of violating two different statutory provisions arising from a single sale of dangerous drugs, and the second was

4

whether the defendant could be convicted of two counts of selling a dangerous drug under a single provision of the Narcotics Act. Crowder, 810 P.2d at 304-05.

When two distinct statutory provisions are involved, the test to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not. Crowder, 810 P.2d at 304 (citing Blockburger, 284 U.S. at 304). The U.S. Supreme Court explained this "elements test" by stating that:

> A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.

Blockburger, 284 U.S. at 304.

This Court has employed the "elements test" to determine whether a defendant can be charged and convicted of violating two statutes for the same act or transaction. See State v. Wolfe (1991), 250 Mont. 400, 821 P.2d 339 (holding that a defendant can be convicted of both possession of explosives and criminal mischief); State v. Clawson (1989), 239 Mont. 413, 781 P.2d 267 (holding that a defendant can be convicted of both sexual intercourse without consent and aggravated kidnapping); State v. Long (1986), 223 Mont. 502, 726 P.2d 1364 (holding that a defendant can be convicted of both misdemeanor assault and sexual assault).

In Crowder, however, we dealt with a situation similar to the second Blockburger issue. Crowder was charged with two violations of the same statutory provision (possession of dangerous drugs) and

5

we were faced with the question of whether Crowder's possession of drugs on his person and possession of drugs on his property constituted two separate acts of possession. Crowder asserted that principles of fundamental fairness required that he be charged only once for conduct which amounted to the same transaction. Crowder, 810 P.2d at 304.

We again looked to the Blockburger Court which addressed the issue as follows:

> Each of several successive sales constitutes a distinct offense, however, closely they may follow each other. . . . [W]hen the impulse is single, but one indictment lies, no matter how long the action may continue. If successive impulses are separately given, even though all unite in swelling a common stream of action, separate indictments lie.

Blockburger, 284 U.S. at 302 (citation omitted). In affirming the convictions, the U.S. Supreme Court examined the legislative intent behind the Narcotics Act and concluded that the statute did not punish engaging in the business of selling dangerous drugs, but rather penalized any sale. Blockburger, 284 U.S. at 302.

We adopted a similar analysis in Crowder and articulated a second test when only one statutory provision is involved. To determine the "allowable unit of prosecution" courts look to legislative intent since discretion is with the legislature to impose punishments, subject only to constitutional limitations. Crowder, 810 P.2d at 305 (citing Bell v. United States (1955), 349 U.S. 81, 82, 75 S. Ct. 620, 622, 99 L. Ed. 905, 910). In Crowder we held that the Legislature intended to punish each separate possession of dangerous drugs and concluded that the district court

6

did not err in failing to join the separate counts of possession on the person and possession on the premises. Crowder 810 P.2d at 305-06.

The facts of the present case align themselves with Crowder in that Stilson was charged under the same statute, § 45-6-316, MCA (1989), and was convicted in all three different counties of issuing a bad check, a felony, common scheme. Thus, the question is whether the Legislature intended that a defendant could be punished for more than one common scheme.

We acknowledge the fact that in State v. Fleming (1987), 225 Mont. 48, 730 P.2d 1178, we stated that "[c]ommon scheme is clearly an element to be charged and proven under § 45-6-316, MCA, as it is specifically mentioned in subsection (3) of the statute." Fleming, 730 P.2d at 1180. Therefore, we do not agree with the State's contention that "common scheme" is merely a sentence enhancement provision which determines if the crime is a misdemeanor or felony. Nevertheless, the focus of our analysis still remains whether or not a defendant may be charged with more than one common scheme.

Stilson's reliance on Fleming and State v. McHugh (1985), 215 Mont. 296, 697 P.2d 466, is misplaced. In both of those cases the defendants were charged in only one county with one count of issuing bad checks as part of a common scheme and the defendants disputed that their conduct constituted a common scheme. We held that the acts of issuing multiple bad checks are a common scheme if the acts were "either individually incomplete such that they show that a single crime had been committed, or [were] acts which

7

closely follow[ed] one another evidencing a continuing criminal design." Fleming, 730 P.2d at 1180. Even though we upheld the convictions and concluded that the defendants' conduct constituted a common scheme, we did not address nor foreclose the possibility that a defendant could, under the appropriate facts and circumstances, be convicted of more than one common scheme.

Stilson argues that the Legislature did not intend to allow the State to divide one common scheme into multiple common schemes and multiple felony violations. According to Stilson, the Legislature did not provide in § 45-6-316, MCA, or anywhere else in the Code, a basis to divide a single common scheme of issuing bad checks into multiple common schemes.

While we agree with Stilson that the Code does not provide for multiple common schemes, we conclude that neither has the legislature foreclosed such a possibility. Under the appropriate facts and circumstances, we conclude that double jeopardy protections do not necessarily prevent a defendant who has been convicted of a common scheme in one county from being convicted of another common scheme in a different county.

In this case Stilson was charged in each county for only those checks written in that particular county and the bad checks written in each county were separate and distinct "common scheme" offenses. Stilson wrote bad checks to a number of different vendors in each county and, when taken together, such a series of acts provides the basis for the charge of felony common scheme in each county. The evidence required for the State to prove the offense in each county

8

was different and specific to each county and the series of acts or transactions in each county were different from those in the other jurisdictions, both individually and as a group.

Thus, under the specific facts and circumstances of this case, Stilson committed the crime of writing a bad check, a felony, common scheme, in each of the jurisdictions for which he was charged and we hold that the convictions he received in the Fourth and Eighth Judicial District Courts did not violate his double jeopardy rights. Therefore,

IT IS HEREBY ORDERED that Stilson's petition for post-conviction relief is DENIED.

The Clerk is directed to mail a copy of this opinion and order to all counsel of record and to the Clerks of Court for the First, Fourth, and Eighth Judicial District Courts.

DATED this 25th day of June, 1996.

_____
Chief Justice

_____

_____

_____

_____
Justices

9

Justice W. William Leaphart, dissenting.

I would grant the Petition for Post-Conviction relief on double jeopardy grounds with regard to the conviction of Issuing a Bad Check, a Felony in the Eighth Judicial District Court, Cause No. ADC-91-56. Under State v. Hagan (1994), 265 Mont. 31, 873 P.2d 1385, this Court held that jurisdictional claims are narrowly limited to "those cases in which the district court could determine that the government lacked the power to bring the indictment at the time of accepting the guilty plea from the face of the indictment or from the record." Hagan, 265 Mont. at 36 (citing United States v. Broce (1989), 488 U.S. 563. The State does not contest Petitioner's assertion that the Eighth Judicial District Court accepted Mr. Stilson's guilty plea on the same day that it sentenced him. On that same day, the Eighth Judicial District Court had before it the Pre-Sentence Investigation Report (PSI) prepared with regard to Stilson's previous conviction in Missoula County for the same check writing scheme. The Missoula County PSI in turn references the fact that Stilson was convicted in Lewis & Clark County with regard to the same check writing scheme. Thus, it is clear to me that when the Eighth Judicial District Court accepted Stilson's plea of guilty on June 14, 1991, the "record" of the two prior convictions was both available and sufficient for the court to determine that, due to the constitutional prohibitions against placing a person twice in jeopardy, the government lacked the power to bring the charges at issue.

10

As to whether defendant's state-wide check writing conduct can be broken into separate "common schemes" in which each county charges a common scheme limited to the checks written in that particular county, I note that the Cascade County Information CDC 91-096, charges defendant with Issuing a Bad Check, a Felony, a common scheme. The Information then makes reference to one check which was issued in Cascade County. It is axiomatic that more than one check is necessary in order to constitute a "common scheme." One cannot tell from the face of the Information whether the other checks necessary to constitute the "common scheme" were written in Cascade County or were the same checks which were the basis for the charges in Lewis & Clark and Missoula Counties. The Cascade County Judgment does, however, reference the fact that the defendant was convicted for writing bad checks in Missoula and Helena.

Accordingly, I cannot conclude that the Cascade County charge of "common scheme" was based solely upon checks issued in Cascade County and that it did not encompass checks from other counties wherein the defendant had already been put in jeopardy.

_____
Justice

Justice Terry N. Trieweiler and Justice William E. Hunt, Sr., join in the foregoing dissent of Justice W. William Leaphart.

_____

_____
Justices

11

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Jeffrey T. Renz, Director
Jonathan Kudrna, Legal Intern
Montana Defender Project
University of Montana School of Law
Missoula, MT 59812

Hon. Joseph P. Mazurek, A.G.
Cregg Coughlin, Assistant
Justice Bldg.
Helena, MT 59620

Robert Deschamps, III
County Attorney
Missoula County Courthouse
Missoula, MT 59802

Brant Light
County Attorney
121 4th Street North
Great Falls, MT 59401

Mike McGrath
L & C County Attorney
228 Broadway, Courthouse
Helena, MT 59624

Dennis Paxinos
Yellowstone County Attorney
P.O. Box 35025
Billings, MT 59107

ED SMITH

CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy