No. 88-333

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

---

STATE OF MONTANA,

        Plaintiff and Respondent,

  -vs-

LILLIAN UNGARETTI,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable James Wheelis, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Gregory A. Jackson; Jackson & Rice, Helena, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
        Elizabeth S. Baker, Asst. Atty. General, Helena
        Robert Deschamps, III, County Attorney, Missoula,
        Montana; Craig Friedenauer, Deputy Co. Atty., Missoula

Submitted on Briefs:  Aug. 31, 1989

Decided:  September 27, 1989

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

This is an appeal from a felony conviction in the District Court of the Fourth Judicial District, Missoula County, Montana. Appellant Lillian Ungaretti appeals her conviction on one count of possession with intent to sell a dangerous drug. We affirm.

Appellant raises the following issues for review:

1. Whether the District Court erred in denying appellant's motion for a directed verdict on the grounds that there was insufficient corroboration of the accomplice testimony?

2. Whether the District Court erred in admitting prejudicial evidence of other crimes?

3. Whether the District Court erred by inadequately providing cautionary instructions to the jury on the introduction of "other crimes" evidence?

Appellant Lillian (Topsy) Ungaretti was charged in Missoula County, along with her daughter Mia Grenfell and son Darrell Grenfell, with felony possession with intent to sell a dangerous drug. Appellant and Mia were arrested in Las Vegas, Nevada, in December of 1986 for the attempted sale of nearly three pounds of marijuana to undercover police officers. After their arrests, a Las Vegas police officer notified Missoula County law enforcement officials that the appellant had informed them she had a marijuana farm in the basement of a Missoula residence. She gave the officers a street address and a specific description of this residence which was owned by Forest (Pappy) Tupper.

Based upon this information, Missoula officers checked the address and compared the description given, then obtained and executed a search warrant at the Tupper residence. Tupper, a seventy-two-year-old retired University employee, expected the officers when they arrived and led them to the basement where the marijuana was growing.

2

The officers discovered in the Tupper residence a large and sophisticated marijuana growing operation. The basement was divided into three rooms, each containing marijuana plants in certain stages of development. In all, 108 marijuana plants and various plastic and paper sacks containing marijuana leaves and stems were seized. The operation was equipped with special grow lights, heaters, carbon dioxide tanks, and a marijuana growers handbook. Numerous fertilizers and soils were also in the basement. Found on the wall of the basement were handwritten instructions for the daily and weekly care and harvesting of the plants. Additionally, the wiring to the electricity meter had been altered in order to hide the large amount of electricity being consumed by the grow operation.

At trial, Tupper testified that he originally found two sickly marijuana plants on his property near Lolo, Montana, and that he attempted to revive them. One plant survived and seeds from that plant were used to grow other plants. Appellant's son, Darrell Grenfell, was acquainted with Tupper from the University and spent much time at his house. Tupper claimed it was Darrell who confirmed that the original plants were in fact marijuana and from whom he received assistance in growing the plants. Tupper further testified that appellant became involved in the operation and expanded it in size with seeds she claimed were from Hawaii. Tupper stated that appellant, Darrell and Mia would spend much time together working in the basement. He claimed that while he was involved in growing the marijuana, his involvement was limited to operating the lights and fans and watering the plants at the appellant's instructions. He claimed it was not his operation, and he never received any money from the marijuana.

3

## Issue No. 1

Did the District Court err when it denied appellant's motion for a directed verdict on the grounds that there was insufficient corroboration of the accomplice testimony?

Section 46-16-213, MCA, provides:

> A conviction cannot be had on the testimony of one responsible or legally accountable for the same offense, as defined in 45-2-301, unless the testimony is corroborated by other evidence which in itself and without the aid of the testimony of the one responsible or legally accountable for the same offense tends to connect the defendant with the commission of the offense. The corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof.

Appellant contends there was no corroborating evidence to support the testimony of accomplice Tupper. We disagree. Officer Cordell Pearson of the Las Vegas police department testified at trial that, while undercover, he met with the appellant inside the Sahara Hotel on December 29, 1986. According to Pearson's testimony, appellant represented to him that "she had a marijuana farm with a friend of hers in Missoula, Montana . . . that she had excellent marijuana, that she did not spray it with any type of chemicals, that it was all THC . . . that she made several trips from Missoula to Phoenix, Arizona, where she transported marijuana in gutted out TV sets . . . [and] that her marijuana was Maui."

Pearson was introduced to appellant in Las Vegas by a "confidential informant" whom appellant knew from Missoula. This informant brought the appellant and Pearson together in the Sahara Hotel, where they discussed the sale of marijuana. Pearson stated that the appellant told him the marijuana belonged to her and her daughter, who was in the car with it. They then arranged to meet in the parking lot of the hotel. Pearson testified that he and another officer drove to the appellant's car and were there greeted

4

by appellant and Mia. The appellant and Mia got into his vehicle with three wrapped packages which contained nearly three pounds of marijuana.

Pearson testified that he arrested the two women after he paid $7,000 to the appellant for the marijuana. He further stated that he and other officers questioned the appellant about the drugs and were told by her that the marijuana "came from her connection in Missoula, Montana, a person by the name of Forest Tupper." Appellant gave Pearson the address of Tupper and described the house as "a light colored house," that "there was some TV's on the porch and there was also a light colored vehicle parked in front." Pearson relayed this information to Missoula County deputy sheriff Terry Lambert, who confirmed after investigation that the description given by the appellant was accurate.

Whether evidence is sufficient to corroborate the testimony of an accomplice is a question of law. The evidence must do more than show the crime was committed or the circumstances of its commission. It must raise more than a suspicion concerning defendant's involvement in the crime. However, it need not be sufficient, by itself, to support a prima facia case against the defendant. The independent evidence need not extend to every fact to which the accomplice testifies. State v. Price (Mont. 1988), 762 P.2d 232, 45 St.Rep. 1798; State v. Miller (Mont. 1988), 757 P.2d 1275, 45 St.Rep. 790. Further, the evidence may be circumstantial and it may come from the defendant or his witness. State v. Cain (1986), 221 Mont. 318, 718 P.2d 654.

Tupper claimed that appellant was the owner of the marijuana, that she expanded the entire operation and purchased much of the equipment in Spokane, Washington. He stated that appellant, Darrell and Mia would come and go as they pleased, at all hours of the day. He further claimed that even though he was expecting the

5

police officers after the appellant was arrested, he chose not to dispose of the marijuana because he considered it belonged to appellant. We conclude that appellant's statements to the Las Vegas authorities sufficiently corroborate the testimony of Tupper. The District Court properly exercised its discretion when it denied appellant's motion for directed verdict.

### Issue No. 2

Did the District Court err when it allowed introduction of evidence of other crimes?

Appellant argues the District Court committed reversible error when it allowed the State to introduce evidence at trial relating to the charges against her in Nevada. Appellant claims Rule 404(b), M.R.Evid., prohibited the introduction of any evidence at trial relative to her arrest in Las Vegas. Rule 404(b), M.R.Evid., states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of notice, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. [Emphasis added.]

Appellant argues that the introduction of her arrest and charges against her in Nevada were unfairly prejudicial and require that her conviction be reversed. Appellant further claims that this "other crimes" evidence also violated the requirement of State v. Just (1979), 184 Mont. 262, 602 P.2d 957, because she received no notice that this evidence would be introduced and no cautionary instructions were given to the jury before the introduction of the evidence. However, appellant's attorney made no objection at trial to the introduction of this evidence.

The State argues that, even though objection to introduction of this evidence has been waived by a failure of counsel to state

an objection at trial, it was nonetheless properly submitted as part of the corpus delicti. We agree. Rule 404(b), M.R.Evid., provides that evidence of other crimes may be admitted for other purposes. One purpose accepted by this Court has been when the other crimes, wrongs or acts introduced are inextricably or inseparably related to the crime charged. State v. Gillham (1983), 206 Mont. 169, 670 P.2d 544. In such a case, "other crimes" evidence does not apply. State v. Romero (1986), 224 Mont. 431, 730 P.2d 1157; State v. Riley (1982), 199 Mont. 413, 649 P.2d 1273.

We conclude there is no question but that the activities of the appellant which resulted in her arrest in Nevada were inseparable and formed much of the basis of the crime charged here. It is not disputed that the marijuana which appellant attempted to sell to the undercover officer was the same as that grown in Tupper's basement. It was the appellant's statement to Pearson, whom she believed to be a potential buyer of the marijuana, that she grew the marijuana with a friend in a residence in Missoula. It additionally was appellant's claim after her arrest that the marijuana was grown in Missoula, and that her connection was Forest Tupper.

In Gillham and Riley, supra, this Court held that the State is entitled to "present the entire corpus delicti of the charged offense including matters closely related to the offense and explanatory of it." The events which took place in Nevada supported and explained the State's position at trial: that appellant had constructive possession of the marijuana while she was in Montana. Additionally, appellant used these events to support her theory of defense to the charge: that she was unknowingly given the marijuana by Tupper as a Christmas gift to deliver to his grandson in Arizona, and that when the grandson was not to be found, Tupper told her to unload the marijuana in Las Vegas. We conclude that

7

the "other crimes" evidence was introduced merely as part of the corpus delicti and thus did not constitute reversible error.

Issue No. 3

Did the District Court err by inadequately providing cautionary instructions to the jury on the introduction of "other crimes" evidence?

In light of our conclusion that the evidence of the events and charges in Nevada were part of the corpus delicti, and were not subject to the <u>Just</u> requirement that cautionary instructions be given to the jury, we will only briefly comment on this issue. In <u>Gillham</u>, we stated:

> Although the District Court did not violate <u>Just</u>, we encourage trial courts to apply the safeguards of <u>Just</u> liberally. Even though the procedures of <u>Just</u> may not be required in a given case, their use may be proper and wise. Especially in close cases, use of the <u>Just</u> procedures would assure fairness to defendants. The procedural safeguards were designed to protect those accused of crime from unfair surprise or double punishment. They should be liberally applied to that end.

<u>Gillham</u>, 206 Mont. at 179, 670 P.2d at 440.

During the trial of this case, the District Court orally warned the jury, although after introduction of evidence of certain of the events in Las Vegas, that they should not consider that testimony as evidence of the crime charged here. Additionally, at the close of the defendants' case, the court read the following instruction to the jury:

> Testimony has been offered as to statements and acts of the Defendants with witnesses in Nevada. You are not to be concerned with whether the Defendants committed a crime in Nevada. You are not to convict them of the crime charged here because you conclude they are guilty of a crime committed elsewhere. You

8

are to consider this testimony, only as to whether it tends to show guilt or innocence of the crime to be considered by you.

The District Court's warning and instruction to the jury protected the appellant from any unfair inferences the jury might have made with respect to the introduction of the Nevada charges. We commend the court for the care exercised and encourage other courts to follow our recommendation in Gillham.

The judgment of the District Court is affirmed.


                                    _____
                                            Chief Justice

We concur:

_____

_____

_____

_____
            Justices


9