No. 90-591

# IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

SCOTT ANTHONY WOLFE,

Defendant and Appellant.

FILED

NOV 14 1991

Ed Smith

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Douglas G. Harkin, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

J. Dirk Beccari and Marcia M. Jacobson; Public
Defender's Offices; Missoula, Montana.

For Respondent:

Hon. Marc Racicot, Attorney General, Helena,
Montana; Elizabeth Griffing, Assistant Attorney
General, Helena, Montana; Robert L Deschamps III,
County Attorney, Missoula, Montana; Fred Van
Valkenberg, Deputy County Attorney, Missoula,
Montana.

Submitted on briefs: May 31, 1991

Decided: November 14, 1991

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Scott Anthony Wolfe (Wolfe) appeals his convictions of possession of explosives and criminal mischief following a jury trial in the Fourth Judicial District, Missoula County. We affirm.

Wolfe presents the following issues:

1. Did the District Court err when it denied Wolfe's motion for dismissal under the 180-day speedy trial provision of the Interstate Agreement on Detainers?

2. Did the District Court err by subjecting Wolfe to double jeopardy when it entered judgment against him on possession of explosives and criminal mischief?

3. Did the District Court err by prejudicing Wolfe when it admitted evidence of Wolfe's prior acts for the jury's consideration?

4. Did the District Court err by denying Wolfe's 1) motions for mistrial and related objections, and 2) motion for a directed verdict?

From 1981 to 1987, Wolfe worked for Montana Hearth Company, a small company located in Missoula, Montana. Montana Hearth Company quarried flagstone and manufactured stone hearth pads. Wolfe worked mainly in the company's manufacturing shop in Missoula, but occasionally worked at the quarry sites, where he helped co-workers use blasting equipment to quarry the hearth stone.

Montana Hearth Company purchased its blasting equipment from various businesses in Montana. This blasting equipment included Aisla "Thistle" brand fuses, a rare brand of safety fuse manufactured in Scotland; blasting caps; and two types of dynamite, Atlas Giant Gelatin Sticks and Ireco Iremite.

Generally, Montana Hearth Company used its blasting equipment within two or three days of purchase. In January or February 1987, however, Ireco Iremite dynamite, Aisla "Thistle" brand fuses, and blasting caps were taken from a quarry site to the Missoula shop for storage. Around this time, Richard Bossard, a Montana Hearth Company co-owner, realized that a large amount of blasting caps and fuse were missing.

In the early morning hours of Easter Sunday on April 19, 1987, an unmarked and unoccupied police car parked by the City Hall Building in Missoula was blown up by explosives. Following an expert examination of the scene of the explosion, examiners concluded that Aisla "Thistle" brand safety fuse and Ireco Iremite dynamite had been used to blow up the police car.

During the weekend of April 18-19, 1987, George Chaussee (Chaussee), a co-owner of Montana Hearth Company, stayed with Wolfe at an apartment rented by Darcy Estes Conover (Conover), Wolfe's then-girlfriend. On the evening of April 18, 1987, Wolfe asked Chaussee if he could borrow Chaussee's truck. Chaussee agreed. Wolfe then departed from the apartment in Chaussee's truck.

3

Chaussee remained at the apartment that evening. Hours later, when Wolfe returned to the apartment, Wolfe woke Chaussee up and told Chaussee that he had blown up a police car. Because of their friendship, Chaussee did not inform authorities of Wolfe's admission until he was subpoenaed by a federal grand jury.

On the evening of April 18, 1987, Michael Watson (Watson) saw and conversed with Wolfe at a bar near City Hall in Missoula. Watson testified that Wolfe declined to attend an early morning party on April 19, 1987, because Wolfe had "other things that he had to attend to."

One week later, Wolfe stayed with Conover at Quinn Hot Springs located near one of Montana Hearth Company's quarry sites. Conover teased Wolfe about firearms in his possession after reading newspaper articles concerning the police car explosion, which made reference to possible neo-Nazi involvement. Conover asked Wolfe if he was a neo-Nazi. According to Conover, Wolfe replied that her question was funny because someone had asked him if he had gotten religion the weekend before. Conover then asked Wolfe if he was referring to the police car explosion incident; Wolfe sarcastically replied, "yeah."

Prior to Chaussee's testimony before a federal grand jury, authorities suspected Wolfe of involvement in this police car explosion incident. In December 1986, pursuant to a federal search warrant, Missoula County Sheriff's Department detectives searched

4

a residence then shared by Wolfe and Chaussee. Among other things, the detectives found sticks of Atlas Giant Gelatin dynamite, Aisla "Thistle" brand safety fuses, blasting caps, and five destructive devices in Wolfe's bedroom closet.

On January 17, 1989, Wolfe was charged by information with one count of possession of explosives in violation of § 45-8-335, MCA (1987), and one count of criminal mischief in violation of § 45-6-101, MCA (1987). Wolfe was imprisoned at a federal prison in Oakdale, Louisiana, at this time. On October 25, 1989, Wolfe filed with the District Court a motion to dismiss the information on the ground that his right to a speedy trial had been violated under the Interstate Agreement on Detainers (IAD). On December 15, 1989, the District Court denied Wolfe's motion to dismiss, and later, denied Wolfe's motion to reconsider following a hearing on the matter. Wolfe then petitioned this Court for a writ of supervisory control seeking dismissal of the information on the same ground. This Court dismissed Wolfe's petition in an order dated March 20, 1990, holding that Wolfe had an adequate remedy on appeal.

Following a jury trial, which began on July 11, 1990, Wolfe was found guilty of both crimes as charged. The District Court, on September 17, 1990, sentenced Wolfe to twenty years imprisonment for the conviction of possession of explosives, ten years imprisonment for the conviction of criminal mischief, and ten years imprisonment with five years suspended for being a persistent

5

felony offender, all sentences to run consecutively. From these convictions, Wolfe appeals.

1. Did the District Court err when it denied Wolfe's motion for dismissal under the 180-day speedy trial provision of the Interstate Agreement on Detainers?

On January 17, 1989, Wolfe was serving a federal prison sentence in Oakdale, Louisiana, when charges were filed against him in Montana regarding the police car explosion incident. On January 29, 1989, Wolfe wrote a letter to the Missoula County Attorney's Office informing the office of his location so a detainer could be issued. On February 6, 1989, the Missoula County Sheriff's Office sent certified copies of the warrant and information in this case to Jessie Smith, an inmate technician at the federal prison in Oakdale, Louisiana, requesting that a detainer be lodged against Wolfe. On February 7, 1989, a Missoula deputy county attorney wrote a letter to Wolfe informing him that Montana was in the process of placing a detainer against him. In this letter, the deputy county attorney also advised Wolfe to discuss this matter with an attorney.

On February 24, 1989, Wolfe wrote and informed his case manager at the federal prison of the Montana detainer. The case manager responded on February 26, 1989, and advised Wolfe to "Please come by and see me." On February 27, 1989, Wolfe requested

6

the R. and D. Office (prison records department) of the federal prison "to get the paper work started on the Interstate Agreement on Detainers" because its completion would commence the 180-day time limit for Montana to bring Wolfe to trial on this matter.

According to Wolfe, his prison officials failed to "promptly forward" his request within a reasonable time. Besides Wolfe's assertion, the record is devoid of evidence that prison officials failed to respond to Wolfe's request within a reasonable time. Wolfe then researched the IAD in the prison law library and chose to proceed with the notification requirements under the IAD on his own and without the assistance of prison officials.

On March 2, 1989, three days after his request for assistance to the R. and D. Office, Wolfe sent by registered mail to the "County Court Clerk" in Missoula three copies each of the following: a Notice of Motion to Discover Exculpatory Evidence in Possession of Prosecutor; an Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints form; a letter addressed to Robert L. Deschamps, the Missoula County Attorney; and a computer printout dated February 27, 1989, reflecting Wolfe's status at the federal prison. Because the letter in the envelope sent by Wolfe was addressed to County Attorney Deschamps, the letter, enclosures and all copies therein were forwarded to the County Attorney's Office and were not filed with the clerk of court. Wolfe later testified that he also

included a handwritten note in this communication which stated to "Please distribute [the copies] to the right people." There is no record that this handwritten note was received by the County Attorney's Office and Wolfe did not retain a copy of it for his file, although he retained copies of all the other documents included in his March 2 mailing. Wolfe later acknowledged at a January 29, 1990 hearing that these papers were not only incomplete, but were improperly completed.

On March 7, 1989, Wolfe prepared and forwarded three copies each of the following by registered mail to the United States District Court of Missoula: a revised Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints form; another letter to the Missoula County Attorney; the same computer printout sent in the March 2 mailing, and a typewritten note, which stated in part, "I APOLOGIZE FOR MAKING A MISTAKE ON THE LAST PAPER WORK THAT I SENT YOU. . . . PLEASE REPLACE THE OTHERS WITH THESE." Apparently, this second mailing was forwarded by the United States District Court of Missoula to the Missoula County Attorney's Office. Wolfe later testified that he once again included a handwritten note that indicated to "Please distribute [the copies] to the right people." Again, however, there is no record that the Missoula County Attorney's Office ever received this note, and Wolfe again could not produce a copy of the note from his records, although he

maintained copies of all the other documents included in his March 7 mailing.

On October 25, 1989, Wolfe moved the District Court for dismissal of the information on the ground that his right to a trial within the 180-day limitation under the IAD had been violated. The District Court denied Wolfe's motion holding that Wolfe had failed to substantially comply with the IAD procedure in his March 2 and March 7 mailings. Wolfe moved the District Court to reconsider its holding. Following a January 29, 1990 hearing, where Wolfe testified about his March 2 and March 7 mailings, the District Court denied Wolfe's motion to reconsider and specifically found Wolfe's testimony at the hearing incredible. Wolfe's trial later commenced on July 11, 1990.

Wolfe's argument is two-fold. First, he argues that his February 27, 1989 request to the federal prison officials triggered the IAD's 180-day time limit provision within a reasonable time after his request because of the prison officials' failure to "promptly forward" documents. However, besides Wolfe's own assertion, no evidence exists in the record that the prison officials failed to respond to Wolfe's request within a reasonable amount of time. Furthermore, once Wolfe bypassed the prison officials and proceeded on his own to comply with the IAD notice procedure, he assumed the burden for any deficiencies of notice. Hill v. Jones (1983), 463 N.Y.S.2d 655, 656.

9

Second, Wolfe argues that his March 2 and March 7 mailings were sufficient to trigger the 180-day requirement under the IAD. Upon reviewing the record, we agree with the District Court that Wolfe's right to a speedy trial under the 180-day speedy trial provision of the IAD was not violated because Wolfe chose to bypass prison officials and then, on his own, failed to substantially comply with statutory procedure under the IAD, therefore failing to trigger the IAD's 180-day speedy trial provision. The IAD in § 46-31-101, Art. III(1), MCA, provides in pertinent part:

(1) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint[.] . . . The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of the commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner. [Emphasis added.]

10

Under the express terms of the IAD, Wolfe was required to send written notice and a request for final disposition of his information to both the Missoula County Attorney's Office and the District Court. This he failed to do on two different occasions. We therefore hold that Wolfe was not denied his right to a speedy trial because he failed to comply with IAD procedure which would trigger the 180-day speedy trial provision.

2. Did the District Court err by subjecting Wolfe to double jeopardy when it entered judgment against him on possession of explosives and criminal mischief?

The Fifth Amendment of the United States Constitution protects a defendant "against both multiple prosecutions and multiple punishments imposed at a single prosecution for the same offense." State v. Close (1981), 191 Mont. 229, 245, 623 P.2d 940, 949 (citing North Carolina v. Pearce (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656). See also § 46-11-502, MCA (1989) (recodified at § 46-11-410, MCA (1991)). Here, Wolfe argues that he was subjected to double jeopardy because the crime of criminal mischief could not have occurred without the crime of possession of explosives. In particular, Wolfe relies upon § 46-11-502(2), MCA (1989), which provides that a person may not be convicted of more than one offense if "one offense consists only of a conspiracy or

11

<u>other form of preparation to commit the other</u>. . . ." (Emphasis added.)

Section 46-11-502, MCA (1989), was enacted as part of the 1973 Criminal Code. Its source was Model Penal Code, § 1.07 (Official Draft and Revised Comments 1962). Model Penal Code, § 1.07 commentary at 110, provides in pertinent part:

> Whether certain conduct is <u>a form of prepara-</u> <u>tion to commit another crime</u> is left for judicial interpretation on the facts of the particular case in light of the legislative purpose reflected in the criminal statutes that are involved [footnote omitted] [emphasis added].

Failure to limit the applicability of § 46-11-502(2), MCA (1989), may lead to results beyond those intended by the adoption of the statute. For example, Neal v. State (Calif. 1961), 357 P.2d 839, was a habeas corpus proceeding resulting out of Neal's criminal conviction of arson and two counts of attempted murder. The evidence showed that Neal had thrown gasoline into the bedroom of Mr. and Mrs. Raymond and ignited it leaving the Raymonds severely burned. <u>Neal</u>, 357 P.2d at 841. In the habeas corpus proceeding, the California Supreme Court relied on a statute comparable to § 46-11-502(2), MCA (1989), and held that the arson was the means of perpetrating the attempted murders and that therefore the conviction of both arson and attempted murder violated the statute prohibiting conviction of two crimes when one was merely preparato-

ry to the other. Neal, 357 P.2d at 843. In our view, that was not a just result.

As a further example of the unjust result obtained under Wolfe's interpretation of § 46-11-502(2), MCA (1989), consider the effect of application of that statute to State v. Clawson (1989), 239 Mont. 413, 781 P.2d 267. In that case, Clawson was convicted of brutally abducting, torturing, committing multiple deviate sexual acts upon the victim, and, finally, after slamming her head into a rock and stabbing her fifteen times in her chest and abdomen, leaving her for dead. Clawson, 239 Mont. at 415-16, 781 P.2d at 269-70. He was convicted of aggravated kidnapping, sexual intercourse without consent, and attempted deliberate homicide. Clawson, 239 Mont. at 414, 781 P.2d at 268. Under the interpretation of § 46-11-502(2), MCA (1989), urged by Wolfe, Clawson could arguably have been convicted only of attempted deliberate homicide.

The State asserts that § 46-11-502(2), MCA (1989), addresses only inchoate crimes. Solicitation, conspiracy, and attempt are enumerated as the inchoate offenses in Title 45, Chapter 4, MCA. The State argues that these are the offenses which constitute "form of preparation to commit another crime" under § 46-11-502(2), MCA (1989). Invoking our power of judicial interpretation as recognized in the comments to the Model Penal Code, we agree. The two criminal statutes involved here are § 45-8-335, MCA (1987), possession of explosives, and § 45-6-101, MCA (1987), criminal

13

mischief. The legislative histories of these statutes do not reflect an intent to make possession of explosives a preparatory act to committing criminal mischief. To the contrary, neither statute references the other. We conclude that § 46-11-502(2), MCA (1989), is limited in its application to situations where one crime charged is an inchoate crime. Neither criminal mischief nor possession of explosives is an inchoate crime. We therefore hold that, in this instance, § 46-11-502(2), MCA (1989), does not apply.

Wolfe cites State v. Mitchell (1981), 192 Mont. 16, 625 P.2d 1155. The defendant in Mitchell was convicted of criminal mischief and solicitation regarding the burning of a trailer house. On appeal, the defendant argued and this Court agreed that § 46-11-502(2), MCA, applied to the case and the charged offenses, solicitation and felony criminal mischief. Mitchell, 192 Mont. at 22-23, 625 P.2d at 1159. However, solicitation is specifically described among the inchoate crimes listed in Title 45, Chapter 4, MCA. Therefore, § 46-11-502(2), MCA, was properly applied in that case, but that holding is not relevant here.

The facts of this case are analogous to the facts of State v. Davis (1978), 176 Mont. 196, 577 P.2d 375. In Davis, the defendants, two inmates, were convicted of felony criminal mischief and attempted escape when they dug a hole in the wall of the Powell County jailhouse. Davis, 176 Mont. at 197, 577 P.2d at 376. In that case, this Court did not apply § 46-11-502(2), MCA, or analyze

14

whether the defendants' digging of the hole was a form of preparation to commit an attempted escape. Instead, this Court held that double jeopardy did not apply because the statutes defining the charged offenses had no common elements citing, _inter alia_, Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306. _Davis_, 176 Mont. at 199, 577 P.2d at 375.

In _Blockburger_, 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309, the Court stated:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of an additional fact which the other does not." [Citation omitted.]

We hold that the _Blockburger_ test is the proper test to apply to the facts of the present case. Here, the applicable statutes concern possession of explosives under § 45-8-335(1), MCA (1987), and criminal mischief under § 45-6-101(1), MCA (1987). Section 45-8-335(1), MCA (1987), provided in pertinent part:

> (1) A person commits the offense of possession of explosives if he possesses, manufactures, transports, buys, or sells an explosive compound, flammable material, or timing, detonating, or similar device for use with an explosive compound or incendiary device and:
>
> (a) has the purpose to use such explosive, material, or device to commit an offense;
> . . . .

Section 45-6-101(1), MCA (1987), provided in pertinent part:

15

> (1) A person commits the offense of criminal mischief if he knowingly or purposely:
>
> (a) injures, damages, or destroys any property of another or public property without consent; . . . .

Regarding this case, the elements of possession of explosives are that a person possesses an explosive compound and has the purpose to commit an offense; the elements of criminal mischief are that a person knowingly or purposely injures or destroys public property without consent. The crime of possession of explosives requires the possession of an explosive compound where the crime of criminal mischief does not. The crime of criminal mischief requires injury or damage to property where the crime of possession of explosives does not. Because proof of one crime involves proof of a fact not included in the other crime as stated in the Blockburger test, we hold that Wolfe was not subjected to double jeopardy.

3. Did the District Court err by prejudicing Wolfe when it admitted evidence of Wolfe's prior acts for the jury's consideration?

On July 3, 1990, the State filed with the District Court a notice of intent to introduce evidence of other acts under the requirements of State v. Just (1979), 184 Mont. 262, 602 P.2d 957 and § 46-18-503, MCA (1989) (recodified at § 46-13-108, MCA

16

(1991)). The following were the other acts as provided in this notice:

> 1. Conviction of <u>II COUNTS</u>: FELON IN POSSES-SION OF FIREARMS, both Felonies, in Cause No. CR 87-7-M, United States District Court for the District of Montana. In such case the Defendant entered a plea of guilty on March 27, 1987, was sentenced on April 24, 1987, and was taken into custody for execution of the sentence on April 27, 1987.
>
> 2. The offense of CRIMINAL POSSESSION OF DANGEROUS DRUGS WITH INTENT TO SELL, a Felony, in Cause No. 7663, Fourth Judicial District, Missoula County, Montana, committed on December 11, 1986, and evidence relating to a search of the Defendant's residence on the above date in which dynamite, blasting caps, and Aisla "Thistle" brand safety fuses were found.

On July 11, 1990, in an in-chambers proceeding prior to Wolfe's trial, the District Court denied the State's request to introduce evidence of prior convictions and charged offense, but allowed the State to introduce the fuses, Atlas Giant Gelatin Stick dynamite, and blasting caps seized pursuant to the search warrant. Wolfe argues that the District Court erred when it allowed the admission of the fuses, dynamite, and blasting caps. We disagree.

Rule 404(b), Montana Rule of Evidence, provides that "other crimes, wrongs or acts" evidence may be admissible for the purposes stated in the rule. One additional basis for admission of such evidence recognized by this Court is when evidence of other crimes, wrongs, or acts is introduced as part of the <u>corpus delicti</u> of the

crime charged. State v. Ungaretti (1989), 239 Mont. 314, 319, 779 P.2d 923, 926. Other crimes, wrongs, or acts evidence may be introduced if they "are inextricably or inseparably related to the crime charged." Ungaretti, 239 Mont. at 319, 779 P.2d at 926 (citing State v. Gillham (1983), 206 Mont. 169, 679 P.2d 544).

Here, fuse found by police in Wolfe's bedroom closet in December 1986 was "Aisla" Thistle brand fuse, a rare brand of fuse, and the same brand of fuse used to blow up the police car four months later on April 19, 1987. The dynamite seized in December 1986 was not Ireco Iremite, the dynamite determined by experts to have been used to blow up the police car, but rather, Atlas Giant Gelatin Sticks, the other type of dynamite purchased by Montana Hearth Company for its operation. Both types of dynamite were accessible to Wolfe while he was employed at Montana Hearth Company.

The difference in the brands of the dynamite seized from Wolfe's bedroom closet in December 1986 and the dynamite determined to have been used in the police car bombing is not determinative in this case. What is determinative is that the dynamite, as well as the fuses and blasting caps seized in December 1986, is evidence closely related to the crimes charged against Wolfe in 1987, possession of explosives and criminal mischief. Moreover, the District Court only allowed evidence of the fuse, dynamite, and blasting caps found in the December 1986 search. It disallowed any

18

reference to Wolfe's past convictions or offense to avoid any undue prejudice toward Wolfe. We hold that the fuse, dynamite and blasting caps seized in December 1986 were part of the corpus delicti of the 1987 crimes, and the District Court committed no error in allowing them into evidence at Wolfe's trial.

4. Did the District Court err by denying Wolfe's 1) motions for mistrial and related objections, and 2) motion for a directed verdict?

Wolfe's counsel moved for a mistrial after a federal agent testified that the fuse and explosives were seized under a federal search warrant. After this reference, the District Court issued a cautionary instruction to the jury concerning other crimes evidence. Thereafter, the District Court denied Wolfe's motion for mistrial. The record is devoid of further references to the federal search warrant.

An unresponsive comment was made by Chaussee, who stated, "I don't feel anybody could be happy about going to jail." Wolfe's counsel refused the District Court's offer of a cautionary instruction to the jury after Chaussee's comment, and then moved the District Court for a mistrial based on this comment. The District Court once again denied the motion. The record is devoid of further references to Wolfe's past or future imprisonment.

Wolfe's counsel objected to a reference made by Conover, Wolfe's then-girlfriend, that revealed Wolfe was in possession of firearms one week following the police car explosion incident. The District Court overruled the objection.

Finally, Wolfe argues that the District Court erred when it denied Wolfe's motion for a directed verdict because the jury's verdict in this case was against the weight of the evidence.

"There must be a manifest necessity to declare a mistrial and the defendant must have been deprived of a fair and impartial trial." Clawson, 239 Mont. at 423, 781 P.2d at 273 (citation omitted). We hold that any prejudice caused to Wolfe by the references cited above was minimal in light of the entire record and the references did not deprive him of a fair and impartial trial.

Regarding Wolfe's motion for a directed verdict, we find that substantial evidence supported the jury's verdict in this case and that the District Court properly denied Wolfe's motion for a directed verdict at the close of this case. We therefore hold that the District Court committed no error when it 1) denied Wolfe's motions for mistrial and related objections, and 2) denied Wolfe's motion for a directed verdict.

Chief Justice

We concur:

_John Conway Harrison_

_Karla M. Gray_

_R. C. McDonough_

_Fred J. Weber_
Justices

Justice Terry N. Trieweiler specially concurring in part and dissenting in part.

I concur with those parts of the majority opinion which affirm the defendant's conviction of criminal mischief pursuant to § 45-6-101, MCA.

I dissent from that part of the majority opinion which holds that, under the circumstances in this case, the defendant can be convicted of both criminal mischief and possession of explosives without violating § 46-11-502(2), MCA.

A person violates § 45-8-335, MCA, if:

[H]e possesses . . . an explosive compound . . . <u>and</u>:

(a)  <u>has the purpose to use such explosive, material, or device to commit an offense</u> . . . .  [Emphasis added.]

In other words, an essential element of the crime of possession of explosives is the intent to commit an offense.

In this case, the State proved a violation of § 45-8-335, MCA, by establishing that defendant possessed explosives with the intent to damage or destroy a City of Missoula police vehicle.

Section 45-6-101, MCA, provides that:

(1)  A person commits the offense of criminal mischief if he knowingly or purposely:

(a)  . . . damages, or destroys any property of another or public property without consent . . . .

The defendant could not have committed the crime of criminal mischief without first having formed the intent to damage or destroy the City of Missoula's police vehicle.  The formation of that intent was merely preparatory to commission of the offense.  However, in

22

this case, defendant is being separately punished for both formation of the intent and commission of the act of criminal mischief.

To understand the significance of what is happening here, you need only look at the penalties provided for under each statute. The maximum penalty for criminal mischief under § 45-6-101, MCA, is ten years. The maximum penalty for possession of explosives under § 45-8-335, MCA, is 20 years. In this case, defendant was sentenced to the maximum term for each offense, with ten years suspended. However, the sentences are to be served consecutively.

The majority relies on language from Blockburger v. United States (1932), 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306, for the proposition that the consecutive sentences imposed in this case do not violate the Fifth Amendment prohibition against double jeopardy. However, it is not necessary to consider whether what was done here violates the United States Constitution. Stacking on prison terms for various acts which culminate in one offense is exactly what § 46-11-502(2), MCA, was designed to prevent.

Forming the intent to bomb the Missoula police vehicle, and actually carrying out that intent, constitute the "same transaction" under Montana criminal law. Section 46-11-501, MCA, defines "same transaction" as follows:

(1) The term "same transaction" includes conduct consisting of:

(a) a series of acts or omissions which are motivated by a purpose to accomplish a criminal objective and which are necessary or incidental to the accomplishment of that objective . . . .

23

In this case, possessing explosives was not an offense in and of itself. In order to constitute a crime, the explosives had to have been possessed by the defendant for the purpose of committing a crime. The only crime for which defendant possessed explosives in this case was to blow up the Missoula City police vehicle. Defendant's possession of explosives and actually blowing up the police vehicle were a series of acts motivated by a single criminal objective, and therefore, constitute the "same transaction."

Under these circumstances, § 46-11-502, MCA, provides the following prohibition:

> When the same transaction may establish the commission of more than one offense, a person charged with such conduct may be prosecuted for each such offense. He may not, however, be convicted of more than one offense if:
>
> * * * *
>
> (2) one offense consists only of a conspiracy or other form of preparation to commit the other . . . .

Clearly, in this case, possessing explosives for the purpose of blowing up a police vehicle was a "form of preparation" for actually blowing up the same vehicle.

The majority disposes of § 46-11-502(2), MCA, by concluding (without citation to any authority), that "§ 46-11-502(2), MCA . . . is limited in its application to situations where one crime charged is an inchoate crime." I disagree with that conclusion because it provides a requirement for the application of § 46-11-502(2), MCA, which was neither provided by the legislature, nor finds precedent in any case law which has been cited to this Court.

24

The majority goes on to conclude that "[n]either criminal mischief nor possession of explosives is an inchoate crime." However, I do not agree.

"Inchoate" is described in Black's Law Dictionary as "[i]mperfect; partial; unfinished; begun, but not completed . . . ." A necessary element of the crime of "possession of explosives" is "the purpose to use such explosive, material, or device to commit an offense . . . ." Therefore, possession of explosives is exactly the kind of "inchoate crime" or "anticipatory offense" for which double punishment is proscribed under § 46-11-502(2), MCA.

The legislature has seen fit to limit punishment for criminal mischief to ten years in the State Prison. However, in essence, the defendant in this case has had another 20 years added on to that sentence for forming the intent to commit the crime in the first place. That is clearly a double punishment for the same crime.

For these reasons, I would reverse that part of the District Court judgment which imposed a sentence of 20 years on the defendant for possession of explosives. I would vacate and dismiss that sentence, and affirm that part of the District Court judgment convicting the defendant of criminal mischief and sentencing him to the State Prison for that crime.

_____
Justice

I concur with the foregoing partial concurrence and partial dissent of Justice Trieweiler.

_____
Justice

25