No. 02-232

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 344

STATE OF MONTANA,

    Plaintiff and Respondent,

    v.

CORY MINEZ,

    Defendant and Appellant.

APPEAL FROM:    District Court of the Twentieth Judicial District,
                In and for the County of Lake, Cause No. DC-00-113
                The Honorable C. B. McNeil, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Chad Wright, Appellate Defender, Helena, Montana

        For Respondent:

            Hon. Mike McGrath, Attorney General; Pamela P. Collins,
            Assistant Attorney General, Helena, Montana

            Robert J. Long, Lake County Attorney; Mitchell A. Young
            Deputy County Attorney, Polson, Montana

                            Submitted on Briefs:  August 14, 2003

                                Decided:  December 15, 2003

Filed:

        _____
                            Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     A jury convicted Cory Minez of criminal production of dangerous drugs and use or possession of property subject to criminal forfeiture.  The Twentieth Judicial District Court, Lake County, entered judgment and Minez appeals.  We affirm.

¶2     We address the following issues:

¶3     1.  Did the District Court abuse its discretion in denying Minez's motion for substitution of counsel?

¶4     2.  Do Minez's convictions of producing methamphetamine and possession of glassware and chemicals used to produce methamphetamine violate his rights against double jeopardy?

¶5     3.  Did the District Court illegally sentence Minez as a persistent felony offender?

BACKGROUND

¶6     On the morning of November 2, 2000, officers from the Flathead County Sheriff's Office and the Northwest Drug Task Force searched a home and vehicles belonging to Minez's ex-wife, Cora, in Polson, Montana.  During the search of the home, the officers noticed a strong chemical smell they identified with the production of methamphetamine. They found numerous items--in various rooms of the home and in two cars parked outside-- which they identified as related to the production of methamphetamine and which later tested positive for the presence of methamphetamine and chemicals constituting immediate precursors to methamphetamine.

2

¶7     The officers located Minez in a downstairs bedroom of the home. They arrested him, and the State of Montana charged him with use or possession of property subject to criminal forfeiture and criminal production of dangerous drugs.

¶8     Minez's first trial ended in a mistrial when a juror became sick and there were no alternate jurors. Just before his subsequent jury trial in January of 2002, Minez moved for substitution of counsel, but the court denied his motion.

¶9     At the trial, the State presented testimony by Flathead County and Northwest Drug Task Force officers and a chemist from the Montana State Crime Laboratory concerning the items and chemicals found at the house and in the vehicles. Three informants also testified for the State.

¶10    A neighbor of Cora's testified she had observed Minez apparently living at Cora's house beginning in the summer of 2000. According to the neighbor, Cora, Cora's boyfriend and a teenage daughter also lived there. She testified there was a lot more traffic to and from the house after Minez moved in, and everyone except Minez appeared to be gone during the day. The neighbor had seen Minez using two vehicles parked outside the house on many occasions, and observed that he often backed one car up to the house to load and unload items from the trunk. She testified she had seen a funnel attached to surgical tubing in the open trunk of one of the cars.

¶11    The neighbor's husband, a volunteer firefighter who had been trained as a first responder for methamphetamine labs, also testified. He stated that, on a number of occasions, he had observed Minez taking items wrapped in white plastic out of the trunk and

3

into the house, and taking a gym bag back and forth from the car. He testified that when his wife told him she had seen the funnel and tubing, he became concerned because he knew these items could be connected with a methamphetamine lab.

¶12    An acquaintance of Minez who was incarcerated at the Dawson County Correctional Facility at the time of trial also testified. The acquaintance admitted having told a detective Minez was manufacturing methamphetamine at Cora's house. He denied having told the officer Minez had offered him methamphetamine and that he had seen the methamphetamine lab and iodine crystals and glass tubing in the house. He also denied having prepared a rough diagram, which was introduced into evidence, of the layout of the interior of the house for the officer. The acquaintance acknowledged that the prison grapevine is far-reaching and prisoners identified as "snitches" are treated badly by other prisoners.

¶13    The jury found Minez guilty of both charges, and the District Court sentenced him and entered judgment. Minez appeals.

## ISSUE 1

¶14    Did the District Court abuse its discretion in denying the motion for substitution of counsel?

¶15    A trial court's ruling on a request for substitution of appointed counsel is within that court's discretion and, absent an abuse of discretion, we will not disturb it. *State v. Gallagher*, 2001 MT 39, ¶ 4, 304 Mont. 215, ¶ 4, 19 P.3d 817, ¶ 4 (*Gallagher II*). In reviewing such a ruling, we first determine whether the court made an adequate initial inquiry into the complaints; if so, we then review the court's decision on whether the

4

complaints are seemingly substantial. If the court concludes after an adequate initial inquiry that the defendant has failed to present seemingly substantial complaints, then it need not conduct an additional hearing. *State v. Gallagher*, 1998 MT 70, ¶ 15, 288 Mont. 180, ¶ 15, 955 P.2d 1371, ¶ 15 (*Gallagher I*).

¶16 In his pretrial motion asking the District Court to appoint new counsel to represent him, Minez stated his court-appointed attorney, Ben Anciaux, had "not provided effective assistance" and had "done things that were not with the permission or at the request of Defendant that have prejudiced Defendant." The court held a pretrial hearing on various motions, including this one, and asked Minez to explain his reasons for filing this motion. Minez elaborated that he felt Anciaux had prejudiced him by waiving his speedy trial right and by requesting a mental evaluation without his knowledge or permission. He also stated Anciaux had not followed through on interviewing witnesses or providing him with copies of documents. Minez did not, however, identify the alleged witnesses or outline the witnesses' potential testimony. In response to the court's inquiry if there was anything else, Minez answered "No, sir."

¶17 Ruling from the bench, the District Court noted it had observed Anciaux during the trial which ended in a mistrial and had seen "absolutely nothing" to indicate ineffective assistance or a failure to prepare for trial. It voiced concern that Minez also had filed a motion to dismiss the charges against him on speedy trial grounds, and predicted the first thing a replacement defense counsel would do would be to ask for more time to prepare for trial. The court stated it had every indication Anciaux was acting in Minez's best interest,

5

and found no "seemingly substantial complaints made by the defendant." Observing that there appeared to be a communication problem between Minez and Anciaux, the District Court expressed hope it could be overcome. Finally, it was clear to the court that Minez's "present attorney is not only competent but he's prepared to try this case." The court denied the motion for appointment of new counsel.

¶18 Minez argues on appeal that the District Court inadequately considered his argument that Anciaux had a conflict of interest in representing him. The basis for the alleged conflict is that, in another criminal proceeding in which Anciaux represented Minez, Minez had asserted that Anciaux rendered ineffective assistance of counsel.

¶19 An appellant may not change legal theories on appeal or raise issues which were not raised in the trial court. *State v. Ely*, 2003 MT 140, ¶ 9, 316 Mont. 169, ¶ 9, 69 P.3d 1189,¶ 9 (citations omitted). Minez did not raise the conflict of interest argument in the District Court. Therefore, we do not consider it.

¶20 Minez also contends the District Court did not adequately inquire into his allegations of ineffective assistance of counsel. According to Minez, the court should have asked Anciaux about his attempts, or lack thereof, to contact the witnesses Minez wished him to contact. Relying on *State v. Finley* (1996), 276 Mont. 126, 143, 915 P.2d 208, 219, *overruled on other grounds by Gallagher II*, ¶ 21, Minez asserts the court's failure to require Anciaux to respond to his allegations signified the court's failure to conduct a critical analysis of Minez's complaints. *Finley* is readily distinguishable.

6

¶21    In *Finley*, the defendant made written complaints about his counsel in a *pro se* motion for change of venue. The district court denied the motion without holding a hearing. *Finley*, 276 Mont. at 130, 915 P.2d at 211. On appeal, we concluded the trial court erred in failing to "inquire[] into the complaints" and "ma[k]e some sort of a critical analysis" in response to the motion. We also determined the court had corrected its error by conducting a post-trial hearing on the defendant's complaints about his representation and, consequently, the court's original error was harmless. *See Finley*, 276 Mont. at 143, 915 P.2d at 219.

¶22    Unlike in *Finley*, the District Court in the present case held a hearing on Minez's motion for appointment of new counsel at which it afforded Minez the opportunity to present a full explanation of the claims supporting his motion. Because Minez did not identify any of the witnesses he felt Anciaux should have contacted, the court had nothing about which to question Anciaux in that regard. Moreover, as indicated above, the court voiced its concern about the impact of a substitution of counsel on Minez's right to speedy trial and stated it had seen "absolutely nothing" to indicate Anciaux had failed to prepare for trial or was rendering ineffective assistance of counsel. In any event, this was an initial hearing to determine whether Minez presented seemingly substantial complaints. We conclude the District Court made an adequate initial inquiry into the complaints to satisfy that first requirement from *Gallagher I* and also met *Finley*'s "critical analysis" requirement.

¶23    Minez also relies on *United States v. Nguyen* (9th Cir. 2001), 262 F.3d 998, 1004, for the proposition that, in order to make a sufficient inquiry into a criminal defendant's request for substitution of appointed counsel, a trial court should question the attorney or defendant

7

"privately and in depth" and examine available witnesses. In *Nguyen*, the defendant repeatedly asked to speak with the presiding judge regarding a communication breakdown with his appointed counsel and stated he had witnesses to support his claims. The court decided the matter at a pretrial meeting which the defendant did not personally attend or even know about, and then refused to grant the defendant a full hearing on the issue. *Nguyen*, 262 F.3d at 1003. On appeal, the Ninth Circuit Court of Appeals determined that, given the trial court's failures to conduct a sufficient inquiry into the defendant's request or to consider the length of delay necessary to substitute a new attorney, the degree of inconvenience the delay would cause, why the motion to substitute was not made earlier, or the severity of the conflict, the court had violated the defendant's Sixth Amendment right to counsel. *Nguyen*, 262 F.3d at 1005.

¶24 The Ninth Circuit Court's *Nguyen* test does not precisely mirror Montana law on the subject of an adequate initial inquiry. The District Court in the present case did, however, invite and hear Minez's elaboration on his claims at a pretrial hearing. In further contrast with *Nguyen*, Minez did not offer any witnesses to support his claims; indeed, his briefs on appeal mention only himself and his attorney as potential witnesses. The court analyzed, at least briefly, the degree of conflict present between Minez and Anciaux and the effect on Minez's speedy trial right of a potential delay for substitution of counsel. We conclude that further "private[] and in depth" questioning of Minez was not required in these circumstances.

8

¶25 Proceeding to the second *Gallagher I* requirement, Minez argues his allegations that Anciaux failed to contact witnesses, and waived Minez's right to speedy trial and moved for a mental disease or defect examination without his knowledge or approval, represent a seemingly substantial complaint. We disagree. According to Minez, the conflict between himself and Anciaux is exemplified by Anciaux's actions, without consulting him, of requesting a mental examination and waiving the right to speedy trial. Minez does not claim a breakdown in communication with Anciaux so severe that Minez refused to speak to Anciaux, as is generally required for appointment of new counsel due to lack of communication. *See Gallagher II*, ¶ 13. Further, Minez failed to meet his burden of presenting material facts to support any of his claims; instead offering only bare, unsupported allegations. He did not identify any way in which he felt he had been prejudiced by Anciaux's request for a mental evaluation or waiver of his right to speedy trial. Bare, unsupported allegations are insufficient to justify the appointment of new counsel. *State v. Kaske*, 2002 MT 106, ¶ 30, 309 Mont. 445, ¶ 30, 47 P.3d 824, ¶ 30 (citations omitted). We conclude Minez's complaints were not seemingly substantial.

¶26 On this record, we conclude the District Court made an adequate initial inquiry into Minez's claims. We also conclude the court properly exercised its discretion in determining Minez failed to present seemingly substantial complaints and in declining to hold an additional hearing on Minez's motion for substitution of counsel. We hold, therefore, that the District Court did not abuse its discretion in denying Minez's motion for substitution of counsel.

ISSUE 2

¶27     Do Minez's convictions of producing methamphetamine and possession of glassware and chemicals used to produce methamphetamine violate his rights against double jeopardy?

¶28     Minez argues that, in this case, the offense of possession of property subject to criminal forfeiture--here, glassware and chemicals used to produce methamphetamine--is only a form of preparation to commit the offense of producing methamphetamine. As a result, he argues his conviction of both offenses violates his rights under § 46-11-410(2)(b), MCA, and his constitutional right--under both the United States and Montana Constitutions-- to be free from double jeopardy.

¶29     Section 46-11-410(2)(b), MCA, provides that a defendant may not be convicted of more than one offense if one offense consists only of a conspiracy or other form of preparation to commit the other. The State contends as a threshold matter that, because Minez failed to assert at the settlement of jury instructions that a conviction of use or possession of property subject to criminal forfeiture was prohibited under § 46-11-410(2)(b), MCA, he has failed to preserve the issue for appeal. We disagree.

¶30     Minez filed a pretrial motion in which he claimed "Use or Possession of Property Subject to Criminal Forfeiture is the conspiracy or other preparation to commit and a lesser-included offense of Criminal Production or Manufacture of Dangerous Drugs." After the State filed a response, Minez filed a reply in which he conceded further briefing, argument and ruling on this issue were premature until after evidence was presented at trial. Then, during the settlement of jury instructions, Minez proposed an instruction that use or

10

possession of property subject to criminal forfeiture is a lesser included offense to criminal production or manufacture of dangerous drugs. On this record, we conclude Minez raised and preserved this issue.

¶31 In *State v. Wolfe* (1991), 250 Mont. 400, 821 P.2d 339, the defendant argued his convictions for possession of explosives and criminal mischief violated § 46-11-502(2), MCA (1989). We concluded the statutory prohibition against convictions of two offenses, one of which consists only of a conspiracy or other form of preparation to commit the other, was not violated because the prohibition is limited to situations in which one crime charged is an inchoate crime. *Wolfe*, 250 Mont. at 410, 821 P.2d at 345. Solicitation, conspiracy and attempt are the only offenses enumerated as inchoate offenses in Title 45, Chapter 4, MCA. We note that, while § 46-11-502(2), MCA (1989) was recodified as § 46-11-410(2), MCA, in 1991, the statute remains the same.

¶32 As in *Wolfe*, neither of the two crimes of which Minez was convicted is a statutorily enumerated inchoate offense. Therefore, we conclude that, pursuant to *Wolfe*, Minez's convictions of both counts did not violate § 46-11-410(2)(b), MCA.

¶33 The Fifth Amendment to the United States Constitution and Article II, Section 25 of the Montana Constitution prohibit being put in jeopardy twice for the same offense. Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not. *State v. Beavers*, 1999 MT 260, ¶ 26, 296 Mont. 340, ¶ 26, 987 P.2d 371, ¶ 26 (quoting *Blockburger v. United States*

11

(1932), 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306, 309). Although we determined in *Beavers*, ¶ 27, that the *Blockburger* test is not applicable to analyses of included offenses under § 46-1-202, MCA, we have not discarded it as the standard for determining whether double jeopardy precludes charging two crimes where neither is a lesser included offense of the other.

¶34 The elements of the offense of criminal production or manufacture of dangerous drugs are (1) to purposely or knowingly (2) produce, manufacture, prepare, cultivate, compound or process (3) a dangerous drug as defined in § 50-32-101, MCA. *See* § 45-9-110(1), MCA. The elements of the offense of use or possession of property subject to criminal forfeiture are (1) to knowingly (2) possess, own, use or attempt to use (3) property that is subject to criminal forfeiture. *See* § 45-9-206(1), MCA. "Property subject to criminal forfeiture" is "money, raw materials, products, equipment, and other property of any kind that is used or intended for use in manufacturing, preparing, cultivating, compounding, processing, delivering, importing or exporting a dangerous drug." Section 45-9-206(2)(a), MCA. Thus, the statutory offense of criminal production or manufacture of dangerous drugs requires proof of production, manufacture, preparation, cultivation, compounding or processing of a dangerous drug. *See* § 45-9-110(1), MCA. The statutory offense of use or possession of property subject to criminal forfeiture does not. Conversely, the statutory offense of use or possession of property subject to criminal forfeiture requires proof of possession, ownership, use or an attempt to use property subject to criminal forfeiture. Section 45-9-206(1), MCA, The statutory offense of criminal manufacture of dangerous drugs does not.

12

¶35    We conclude the offenses defined in §§ 45-9-110(1) and 45-9-206(1), MCA, each require proof of an additional fact not required by the other. We hold, therefore, that Minez has not established a constitutional double jeopardy violation.

ISSUE 3

¶36    Did the District Court illegally sentence Minez as a persistent felony offender?

¶37    Minez contends the State failed to give him notice of intent to request that he be designated a persistent felony offender until it recommended the designation at his sentencing in January of 2002. He points out that § 46-13-108, MCA (1999), requires the State to provide notice of intent to seek persistent felony offender status at or before the omnibus hearing, except for good cause shown. The statute further provides that, if the defendant objects to the allegations in the notice, the court shall conduct a hearing to determine if the allegations in the notice are true. Section 46-13-108(3), MCA (1999).

¶38    The premise underlying Minez's claim in this regard is contradicted by the record. Contrary to Minez's representation, the District Court record contains a persistent felony offender notice filed by the State on October 30, 2001, with a certificate of service on Minez's counsel. That notice declared the State's intent to seek to have Minez designated a persistent felony offender based on an October 26, 2001 felony conviction.

¶39    Minez did not object to the October 30, 2001 persistent felony offender notice in the District Court on any basis. Because he did not object, no hearing or findings were required under § 46-13-108(3), MCA (1999). "The purpose for providing such notice is to give the defendant an opportunity to file an objection to the criminal record relied upon in the notice

13

and to hold a hearing should there be any such objections." *State v. Niederklopfer*, 2000 MT 187, ¶ 10, 300 Mont. 397, ¶ 10, 6 P.3d 448, ¶ 10 (citation omitted).

¶40    We hold that Minez has not established he was illegally sentenced as a persistent felony offender.

¶41    Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ JAMES C. NELSON
/S/ JIM REGNIER
/S/ JIM RICE

Justice Patricia O. Cotter concurring and dissenting.

¶42    I concur with the Court's disposition of issues 1 and 3, but dissent from the Court's disposition of issue 2. I would reverse Minez's conviction of the offense of use or possession of property subject to criminal forfeiture and instruct the district court to vacate his sentence on that charge.

¶43    First, I disagree with the Court's conclusion at ¶33 that neither of the crimes of which Minez was convicted is a statutorily enumerated inchoate offense. The enumerated inchoate offenses are solicitation, conspiracy and attempt. Sections 45-4-101 through 103, M.C.A. According to § 45-4-103(1), M.C.A., "[a] person commits the offense of attempt when, with the purpose to commit a specific offense, he does any act toward the commission of such offense." The offense of use or possession of property subject to criminal forfeiture requires proof that one ". . . knowingly possesses, owns uses or attempts to use . . ." the materials necessary to produce a dangerous drug. I cannot understand how the Court can conclude that possessing, using or attempting to use materials necessary to produce a dangerous drug does not constitute an "act toward the commission" of the production of dangerous drugs.

¶44    In *State v. Wolfe*, upon which the Court relies at ¶¶ 32-33, we concluded that neither of the offenses charged was an inchoate crime. In doing so, we found it significant that neither statute referenced the other. *Wolfe*, 250 Mont. at 410. Here, by contrast, § 45-9-206, M.C.A. (the criminal forfeiture statute) alludes *directly* to § 45-9-110, M.C.A. (the criminal possession of dangerous drugs statute). Specifically, § 45-9-206(2)(a), M.C.A. provides that

15

the property that is subject to criminal forfeiture is ". . . the raw materials, products, equipment . . . that is used or intended for use in manufacturing [or] preparing . . . a dangerous drug in violation of . . . (among others) 45-9-110 . . . ." This internal reference in the forfeiture statute to using the forfeitable materials to *commit the other crime charged* makes it clear that the forfeiture crime of which Minez was convicted *is* an inchoate offense. Our discussion in *Wolfe* only buttresses this conclusion.

¶45    Second, even if we address Minez's argument solely on the basis of the Fifth Amendment to the United States Constitution and Article II, Section 25 of the Montana Constitution, which prohibit being put in jeopardy twice for the same offense, the result is the same. As the Court points out at ¶ 31, the test to be applied to determine whether there are two offenses or only one is ". . . whether each provision requires proof of an additional fact which the other does not." I submit that the offense of use or possession of property subject to criminal forfeiture requires proof of the same facts underlying a conviction for criminal production or manufacture of dangerous drugs--i.e., knowing possession, use, or attempt to use, property or materials that are subject to criminal forfeiture.

¶46    Because Minez has established both a statutory and a constitutional double jeopardy violation, I would reverse his conviction for use of possession of property subject to criminal forfeiture and direct the district court to vacate his sentence on that charge. I dissent from our refusal to do so.

/S/ PATRICIA COTTER

Justice John Warner joins in the concurrence and dissent of Justice Patricia O. Cotter.

/S/ JOHN WARNER

Justice W. William Leaphart joins in the foregoing concurrence and dissent of Justice Patricia O. Cotter.

/S/ W. WILLIAM LEAPHART